(No. 32105.—■■■■■■■■■■)

ELECTRO-MOTIVE DIVISION, GENERAL MOTORS CORPORATION, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(MILOW PRIEST, Plaintiff in Error.)

*Opinion filed January 24, 1952.*

128

E. ANNE MAZUR, (GEORGE W. ANGERSTEIN, of counsel,) both of Chicago, for plaintiff in error.

POPE & BALLARD, of Chicago, (LEWIS J. WEST, of counsel,) for defendant in error.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

On the petition of Milow Priest, whom we will refer to as plaintiff, a writ of error was issued under section 19(f)(2) of the Workmen's Compensation Act (Ill. Rev. Stat. 1949, chap. 48, par. 156(f)(2),) to review the decision of the superior court of Cook County setting aside an award of the Industrial Commission in favor of Milow Priest for the loss of an eye allegedly due to an accidental injury arising out of and in the course of his employment by the defendant, Electro-Motive Division, General Motors Corporation.

The sole inquiry in this cause is whether the superior court erred in setting aside the award of the Industrial Commission in a case where the sole issue was a factual determination of whether the loss of plaintiff's right eye was caused by an accidental injury or by pathology not originating in his employment.

From the voluminous record, with its conflicting lay and medical testimony and exhibits, it appears that on the morning of September 9, 1949, at 12:30 A.M., near the end of the night shift, as plaintiff was removing lugs from

old motor leads in the course of his work in the repair department of the defendant, Electro-Motive Division of General Motors Corporation, where he had been working for some seven years, some flying particles of steel struck his right eye. Although there was some irritation, he continued working until his quitting time at 1:24 A.M. and then went home. He was awakened at 6 A.M. by a pain in his right eye which persisted so that immediately upon his arrival back at work that afternoon at his regular time, 4:42 P.M., he went to the first-aid nurse and told her that something was wrong with his eye. She told him he had a sty and put some drops in the eye, and he returned to work until about 8:30 P.M. when the pain became so severe that plaintiff informed the foreman that something had flown in his eye early that morning, and secured permission to go to the first-aid station a second time. In her testimony the nurse denied that two visits were made, or that she applied a bandage the second time, and claimed further that the left eye was involved. Several co-workers, however, testified that they saw the inflamed and watering right eye and later saw a bandage over it. The foreman, testifying on behalf of defendant, admitted that he saw a bandage over one of plaintiff's eyes after he reported back from the first-aid station.

Plaintiff's assertion that the right eye was involved is further corroborated by the testimony of a neighbor and of the latter's brother-in-law, who drove and rode beside him to the home of a local doctor the following day. The doctor administered some drops for the pain and suggested that plaintiff consult a specialist. In his testimony the doctor stated that from his recollection the left eye was involved. However, the records of the Evangelical hospital, where plaintiff was taken some five days later when a hypopyon ulcer developed in the cornea of plaintiff's right eye, necessitating the removal of the eye, contained no reference to any involvement of the left eye, and revealed

a history of an injury to the right eye by a fragment of flying steel.

On the issue of causal connection, well-qualified experts gave conflicting opinions as to whether the hypopyon ulcer and resulting severe infection, termed panophthalmitis, was, or could have been, caused by untreated latent syphillis, or by an abrasion and bacteria entering the eye under the circumstances of the alleged accident. Defendant also introduced records that plaintiff's pre-employment physical examination revealed frozen pupils, possibly as the result of syphillis at some previous time, but no further eye involvements indicative of syphillis.

On the basis of extensive evidence, presented over a period of six days of hearings before the arbitrator, of which the foregoing merely constitutes the salient high lights, an award was entered in favor of plaintiff, in an amount specified by the statute, for the total loss of an eye. This award was confirmed by the Industrial Commission, but on a writ of *certiorari* to the superior court of Cook County, taken by defendant, Electro-Motive Division of General Motors Corporation, the award was set aside.

It is within the province of the Industrial Commission to draw reasonable inferences and conclusions from the evidence, for that agency, having seen and heard the witnesses and observed their demeanor, can better evaluate the credibility of their testimony, (*de Carrion* v. *Industrial Com.* 370 Ill. 474,) and is qualified by experience and special study to weigh facts applicable to cases within its jurisdiction. (*J. I. Case Co.* v. *Industrial Com.* 378 Ill. 132, 139-40.) It is not the province of the court to weigh the evidence and substitute its judgment for that of the Industrial Commission, (*Allen Son & Co.* v. *Industrial Com.* 349 Ill. 71, 78,) hence, regardless of how this court or the superior court might have held had it heard the same evidence, the findings of the commission that plaintiff injured his right eye should not be disturbed unless they are

manifestly against the weight of the evidence. *Wilhelm* v. *Industrial Com.* 399 Ill. 80, 90.

It is apparent from our review of the record that the evidence, with its inconsistencies and contradictions, was capable of an inference either way as to whether plaintiff sustained an injury to his right or left eye. However, in view of the corroborating testimony of plaintiff's co-workers, the foreman, and the persons who drove plaintiff to the doctor's home the day after the alleged accident, the findings of the Industrial Commission on that issue cannot be deemed to be manifestly against the weight of the evidence.

With reference to the conflicting medical testimony as to whether the injury could have caused the ulcer and ensuing infection which necessitated evisceration of the eye, the courts have repeatedly held that where the findings of the commission depend upon the adoption of one of two highly conflicting views of medical experts, the court will not undertake to decide which of the two groups is more worthy of belief, and whose evidence is entitled to greater credence, for that determination is pre-eminently a function of the Industrial Commission. *Chicago, Wilmington & Franklin Coal Co.* v. *Industrial Com.* 400 Ill. 60, 66.

In *Boutwell* v. *Industrial Com.* 408 Ill. 11, the court stated, at pages 17, 18: "When opinions of the medical witnesses are conflicting, it is difficult for lay opinions to determine with the requisite nicety upon which side the weight of the evidence falls.  *  *  *  The court will not undertake to decide where the preponderance of the evidence lies, or which medical experts are more worthy of belief, and will not substitute its judgment for that of the commission unless the decision of the commission is clearly and manifestly contrary to the weight of the evidence."

We have confronting us two conflicting medical theories emanating from experts of equal capacity. There is nothing in the record to indicate that either is manifestly wrong.

132

The arbitrator and the Industrial Commission, equipped as they are as specialists in this field, subscribed to the theory that plaintiff's injuries were compensable. The superior court was in error in rejecting that determination and substituting its judgment for that of the Industrial Commission. The award entered for the petitioner should be reinstated. Consequently, the judgment determining otherwise is hereby reversed and the award confirmed.

*Judgment reversed; award confirmed.*