(No. 33887.—

ACF INDUSTRIES, INCORPORATED, (formerly American Car and Foundry Company,) Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(PAULINE SUSKI, Defendant in Error.)

*Opinion filed May 23, 1956.*

STEVENSON, CONAGHAN, VELDE and HACKBERT, of Chicago, (HARLAN L. HACKBERT, and DOUGLAS F. STEVENSON, of counsel,) for plaintiff in error.

HAROLD TUCKER, of Chicago, (CHARLES WOLFF, of counsel,) for defendant in error.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The question here is whether or not a determination of the Industrial Commission which denied a claim of death benefits was properly set aside upon review. On May 20, 1949, Albert Suski filed an application for adjustment of his claim for loss of use of his right foot against his employer, American Car and Foundry Company, now ACF Industries, Inc. Suski died on September 8, 1949, and thereafter his widow, Pauline Suski, filed an amended application, alleging that her husband's death resulted from the injury. An arbitrator found that the injury caused Suski's death. The Industrial Commission set aside the arbitrator's award, and found that Suski died from causes not related to the injury.

The circuit court of Cook County set aside the decision of the commission as contrary to the manifest weight of the evidence and remanded the cause to the commission, with directions to hear such further medical evidence as the parties might offer, and in the event that no additional

evidence was offered, to award death benefits. No additional evidence was offered on remand, and in obedience to the mandate of the circuit court the commission found that Suski's death resulted from causes related to his injury and awarded benefits accordingly. Respondent filed a writ of *certiorari* to review this order in the superior court of Cook County. That court was of the opinion that it was without jurisdiction to review the remanding order of the circuit court and without reviewing the evidence confirmed the decision of the commission. We allowed a writ of error.

The order of the circuit court which remanded the cause to the commission was interlocutory. (*Joyce Bros. Storage and Van Co.* v. *Industrial Com.* 399 Ill. 456; *American Manganese Steel Co.* v. *Industrial Com.* 399 Ill. 272; *Brown Shoe Co.* v. *Industrial Com.* 374 Ill. 500.) The ultimate award of the commission, however, was made in accordance with that order, and the award has been sustained. Upon this writ of error the entire record is before us, and the correctness of the order of the circuit court is open to review. *Northwestern University* v. *Industrial Com.* 409 Ill. 216; *American Manganese Steel Co.* v. *Industrial Com.* 399 Ill. 272; *Gray Knox Marble Co.* v. *Industrial Com.* 363 Ill. 210; *Yellow Cab Co.* v. *Industrial Com.* 333 Ill. 49.

The only disputed issue of fact before the commission was whether or not there was a causal relationship between Suski's injury on May 20, 1949, and his death on September 8, 1949. The only question argued here is whether the original determination of the commission that his injury was not related to his death was against the manifest weight of the evidence. Only three witnesses, the claimant and two doctors, testified. Neither doctor saw Suski after the injury to his foot.

Suski was 45 years old. He was a helper in the blacksmith shop, and he was injured when an angle iron fell from a hand truck he was operating onto his right foot.

An X-ray was taken, and Suski was told that it was just a heavy bruise and that he should put hot applications on it to reduce the swelling. He continued to work the rest of the day and went to work the next day, a Saturday. Two days later, on Monday, he was told by another doctor that the X-ray indicated fractures. He was hospitalized for the next three or four days, and his foot was put in a cast equipped with a walking caliper, which he wore until July 7 or 8 when it was removed. He returned to work on August 17, first doing light jobs such as sweeping the floor, and resumed his normal duties on August 21. When he went home on August 29, he complained of feeling ill and weak. He remained at home, confined to his bed part of the time. On the morning of September 8, he complained of weakness and difficulty in breathing. His physician, Dr. Edward Madey, was summoned but Suski died before he arrived. The death certificate gave the cause of death as acute coronary occlusion and stated that Suski was a chronic alcoholic.

Claimant testified that Suski had never made any complaints to her about his physical condition prior to May 20, 1949; that after he returned to work, she observed that he breathed heavily when he climbed the three flights of stairs in their home, and that he complained of sharp shooting pains which radiated from his right foot through the leg, sometimes causing a jerking of the entire body.

Claimant's medical witness, Dr. Edward Madey, stated that in his practice he had looked at about 75 cases of coronary occlusion. He had examined Suski some four years before the accident. At that time he complained of periodic bouts of shortness of breath and fullness in his upper abdomen, particularly after his big meal. Suski refused to have an electrocardiogram, and Dr. Madey made a diagnosis of "complaints relative to his heart" and prescribed sedatives, antispasmodics and nitroglycerine tablets. He saw Suski on two or three subsequent occasions and

again about eight months before his death. At that time, Suski stated that the episodes of tightness in his chest seemed to be increasing, not only after eating, but when he did any extensive amount of work or climbed the three flights of stairs in his home. Dr. Madey told Suski to continue with the medication previously prescribed. He testified that Suski had become a heavy drinker since his first consultation.

In response to a hypothetical question, he stated that the accident suffered on May 20 might have contributed to Suski's death on September 8, 1949. "We know from experience," he said, "that any psychic or physical trauma to an individual who shows evidence of progressive organic heart disease may accelerate the process by imposing an additional prolonged strain on a heart that is already damaged, and may result in an earlier death than might be expected." On cross-examination, he said: "I am not saying that the man's death was directly due to the trauma of the accident three and a half months prior to his death. I am stating that an injury of that type, with a prolonged period of disability, might reasonably place an added strain on the man's heart and result in acceleration of degenerative processes which might cause his death." To the question: "Do you believe that an accident such as this man had, an injury to the foot, fracture of the foot, would result in coronary occlusion three and a half or four months later, or would you expect it much sooner than that?" Dr. Madey replied: "You never can tell whether the accident directly contributed to the man's early death, or whether he was going to die at that time, anyway. You have no measure, no guide."

Dr. Chauncey Maher, a specialist in heart disease, testified for the employer. When asked substantially the same hypothetical question submitted to Dr. Madey, he expressed the opinion that there was no causal connection between the accident described and Suski's death. He testified that an

acute coronary occlusion or thrombosis is a specific episode which occurs in the course of a primarily chronic disease known as coronary sclerosis, or hardening of the arteries of the heart; that what brings about an occlusion has never been answered, and that why an occlusion should occur at a particular time has never been satisfactorily explained. He testified that there is no scientific reason to believe that strenuous exercise might accelerate an occlusion in a person suffering from antecedent coronary or arteriosclerosis, and that he would advise a patient of his to return to a strenuous form of work. He testified further that he had a number of patients currently and in past years who have had coronary sclerosis and some of whom have had a coronary thrombosis; that these patients had sustained fractures of the legs, ribs or skull, suffered dental extractions, or undergone major surgical operations, and that there was nothing in his experience leading him to believe that "that type of thing, which is much greater than the trauma in this hypothetical question, had anything to do with their course." To the arbitrator's question as to whether, in his opinion, trauma in any form would not accelerate the death of one suffering with coronary sclerosis, he answered: "* * * I have had the experience of subjecting these patients to major surgery, bowel obstruction, gall bladder operations, brain operations. I have seen patients with extensive fractures who had coronary disease, under my care, and there has been no evidence in my record that trauma of a surgical type, or trauma of a fracture type has precipitated coronary thrombosis in such patients. I say it would not accelerate it or precipitate death."

It is the function of the commission to draw inferences from the evidence in workmen's compensation proceedings, and the decision of the commission upon a finding of fact is not to be set aside unless it is manifestly against the weight of the evidence. (*Hunter Packing Co.* v. *Industrial Com.* 1 Ill.2d 99; *American Manganese Steel Co.* v. *In-*

*dustrial Com.* 399 Ill. 272; *Weil-Kalter Mfg. Co.* v. *Industrial Com.* 376 Ill. 48.) The question here was whether the injury to decedent's foot brought about the fatal coronary occlusion three and a half months later. On that issue the evidence consists almost entirely of the conflicting views of two medical witnesses. Under the circumstances the commission was required to determine which testimony was entitled to the greater weight, (*Railway Express Agency* v. *Industrial Com.* 415 Ill. 294; *Turner* v. *Industrial Com.* 393 Ill. 528; *J. I. Case Co.* v. *Industrial Com.* 378 Ill. 132,) and upon the record made, the original decision of the commission was not contrary to the manifest weight of the evidence.

Claimant argues, however, that the conclusion of the company's medical expert is outweighed by "the facts that prior to the accident the decedent was physically capable of performing his work and duties in the normal manner, that he sustained a severe trauma, and that immediately thereafter his physical condition declined and deteriorated until it culminated in his death." But the testimony of the claimant that her husband was in good health prior to his injury directly conflicts with the testimony of Dr. Madey, who testified that Suski had been suffering from a heart ailment for several years prior to the date of the accident.

Claimant also argues that adverse inferences may be drawn against a party to whom material evidence is available and who fails to produce it or account for its absence. (*International Sales Co.* v. *Industrial Com.* 365 Ill. 436.) Her point is that the evidence shows that after the accident Suski was treated by at least two of the employer's doctors, that he was under the care of one of them from a few days after the accident until at least July 8, 1949, and that neither of these doctors was called as a witness. The weight to be given to the employer's failure to call the doctors who treated the injury to Suski's foot rested with the commission. Whether their testimony would have sup-

ported claimant's medical witness or the employer's medical expert is a matter of speculation.

In this case the original decision of the commission was reviewed in the circuit court of Cook County. Review of the commission's second decision, entered in accordance with the mandate of the circuit court, was sought in the superior court of Cook County. It was the view of the judge of the superior court that he was "without jurisdiction to review said remanding order of the Circuit Court" and therefore he confirmed the second decision of the commission without having reviewed the evidence in the record. Our decisions on the point are not entirely clear. *Brown Shoe Co.* v. *Industrial Com.* 374 Ill. 500, supports the view taken by the superior court. On the other hand, *American Manganese Steel Co.* v. *Industrial Com,* 399 Ill. 272, and *Yellow Cab Co.* v. *Industrial Com.* 333 Ill. 49, strongly suggest that the second court has jurisdiction to review the full record. The practice of reviewing orders of the commission entered in a single proceeding in different courts is inimical to orderly judicial procedure. The power of the circuit and superior courts of Cook County to transfer a case to the appropriate court, "if considerations of justice or convenience require it," is adequate to solve problems of this kind if they should arise in the future. Ill. Rev. Stat. 1955, chap. 146, par. 37. See Ill. Rev. Stat. 1955, chap. 110, par. 10; *Caterpillar Tractor Co.* v. *Industrial Com.* 397 Ill. 474.

In our opinion the circuit court should not have reversed the original decision of the commission and remanded the cause to the Industrial Commission, and the superior court, upon review of the award in favor of the claimant, should have set it aside.

The judgment of the superior court of Cook County is reversed and the award in favor of the defendant in error, Pauline Suski, is set aside.

*Judgment reversed; award set aside.*