(No. 34596.—

AMERICAN SMELTING AND REFINING CORPORATION, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(WENDELL KAISER, Plaintiff in Error.)

*Opinion filed March 20, 1958.*

FRANK M. SUMMERS, of East St. Louis, (WILLIAM W. BROOKS, of counsel,) for plaintiff in error.

OEHMKE, DUNHAM & BOWMAN, and THOMAS Q. KEEFE, both of East St. Louis, for defendant in error.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Wendell Kaiser filed an amended application for adjustment of claim under the Workmen's Occupational Disease Act, against the American Smelting and Refining Corporation, alleging that on approximately May 1, 1954, and prior thereto he was last exposed to an occupational disease hazard, that the employer denies liability and disputes the amount and duration of compensation payable, and that he was totally disabled by chronic lead poisoning. After hearing, the arbitrator rendered a decision on February 29, 1956, finding the petitioner's condition was not the result of an occupational disease and denying the claim for compensation. Upon review of the record, without additional evidence, and upon oral argument the Industrial Commission set aside the award of the arbitrator, found

that petitioner sustained a disablement which resulted from an occupational disease, and ordered the respondent to pay compensation at the rate of $29 per week for 293 weeks and one week at $3, thereafter an annual pension of $680 in monthly installments, and the sum of $175.65 for necessary first aid, medical, surgical and hospital expenses incurred. The respondent smelting corporation filed *certiorari* proceedings in the circuit court of Madison County. Upon review of the record, and having heard oral arguments of counsel and received written briefs, the circuit court found the decision of the Industrial Commission to be contrary to the law and against the manifest weight of the evidence, set aside the award of the Industrial Commission, and denied the claim of Kaiser. The cause is here by writ of error.

The question presented is whether the decision of the Industrial Commission is against the manifest weight of the evidence. The parties agreed that petitioner earned $2548.80 during the year preceeding the last day he worked for respondent, averaging $49 weekly.

It appears from the record that Kaiser was first employed by the respondent on June 26, 1929. He worked in the blast furnace area, and then in the smelting department where he stacked and filled bags and picked up slack. In 1940, he was paid compensation for mild lead intoxication. Kaiser testified that he had an attack on September 5, 1953, that he could hardly walk and had vomiting spells. He was treated by the company physician, Dr. Lynn, for a week and then by Dr. Mack I. Davis, and Dr. Horton.

Dr. C. P. Horton testified he treated Kaiser in 1940 for lead poisoning. Again in April, 1954, he treated Kaiser, finding symptoms of acute lead poisoning. He hospitalized the patient and sent him to St. Joseph's Hospital for laboratory work under Dr. Halley. He further stated that Kaiser is permanently disabled as a result of lead poisoning. On cross-examination Dr. Horton stated the symptoms of

Kaiser could be indication of syphilis or tabes, but he found no evidence of syphilis on April 15, 1954, when he performed a spinal tap. He said the diagnosis of other doctors that Kaiser had syphilis and tabes would differ from his although the symptoms would be the same.

Dr. Henry Halley ran tests on Kaiser in 1954 at the request of Dr. Horton and found the blood test for syphilis to be negative. He stated that a finding of one plus negative is almost considered negative. He further stated great doses of penicillin or bismuth in time would have an effect on a Kahn test for syphilis, and that he performed no tests to determine a finding of lead or lead intoxication.

Theodore Weischselbaum, a toxicologist and chemist, examined Kaiser's urine in December, 1954, at the request of Dr. Halley, and found lead of 0.22 mg. per 24 hours. He made no test for porphyrins, a test for lead intoxication, because none was requested. The lead found was four times normal. He said bismuth could conceivably interfere with the test, but not knowing how much bismuth had been given, he could not know what portion of the lead reading resulted from bismuth.

Dr. Mira testified for respondent, saying he was called in by Dr. Mack I. Davis in April, 1952 for consultation. He observed Kaiser's gait, his Romberg position which indicated syphilis, and advised antibiotic therapy for infection. He made no Kahn test but stated he understood the patient had positive Kahn spinal fluid. He further said the condition he found could have been caused by something other than syphilis. Dr. Mira had no history of Kaiser's employment. He admitted that lead poisoning could have some effect on a patient's gait and Romberg position. If the patient worked 25 or more years in a lead plant, and had lead poisoning one or more times, he said the condition he found could have resulted from chronic lead poisoning.

Dr. Mack I. Davis treated Kaiser in April, 1952. He had his office girl sign respondent's exhibit 3 at his direc-

tion in October, 1953, stating the patient's condition was not a result of his occupation. The exhibit is a blank for insurance compensation. On examination he stated he did not form an opinion whether the condition was occupational. He found that Kaiser's condition could have been caused by toxicity but found no stipple cells. In April of 1952 his Kahn test was one plus negative and his Pandy test was positive protein 19.6. He administered 12 million units of penicillin, and also bismuth in a test for lues. He discharged Kaiser on April 20, 1952, as improved, but admitted him to the hospital on October 28, 1953, and diagnosed tabes. The Kahn and Pandy tests were negative in November, 1953. He then found no stipple cells. Davis stated the penicillin could have an effect on a subsequent Kahn test. He gave him bismuth for a blood count. He did not treat Kaiser for lead poisoning as he understood the amount of lead was small.

The arbitrator determined that the cause of ill-being and disablement was not the result of occupational disease. The only other conclusion is that the arbitrator believed the cause of ill-being to be tabes or syphilis, as that is the only other suggestion made by the evidence. The medical evidence is hopelessly conflicting on this point and the diagnoses are contrary, though each is logically deduced from approximately the same symptoms. Dr. Horton, however, testified that Kaiser had a urine lead test four times normal in December of 1954. The test could have been affected by bismuth, but Dr. Davis states that bismuth was given in 1952 and 1953 for only two tests. Dr. Mira states he proceeded on the theory that the urine lead test indicated a small amount, though *he* did not make the test, and neither the test report nor the plant physician who ran the test was produced.

The arbitrator and the Industrial Commission drew diametrically opposite inferences and conclusions from the medical testimony. Regardless of whether the commission

hears testimony additional to that heard by the arbitrator, it exercises an original jurisdiction and is in no way bound by the arbitrator's findings. (*Garbowicz* v. *Industrial Com.*, 373 Ill. 268.) Moreover, the rule is well established that it is the province of the Industrial Commission to draw reasonable inferences and conclusions from the evidentiary facts, and the courts are not privileged to set aside the findings of the commission unless they are manifestly against the weight of the evidence. (*Olin Industries, Inc.* v. *Industrial Com.*, 394 Ill. 593.) Where the finding of the commission depends upon the adoption of one of two highly conflicting views of medical experts, the court will not undertake to decide which of the two groups is more worthy of belief and whose evidence is entitled to the greater weight. The determination of where the preponderance lies is preeminently a function of the commission. (*Chicago, Wilmington & Franklin Coal Co.* v. *Industrial Com.*, 400 Ill. 60.) The evidence here, as to whether the petitioner's condition was caused by occupational hazard or disease, is conflicting. A complete review of the medical evidence does not indicate that the commission's view is manifestly against the weight of the evidence. The commission's finding is as probable, or more so, than that of the arbitrator and circuit court. Consequently the decision and order of the commission should not have been disturbed.

The respondent urges that in any event the computation of pension is in error. The respondent proceeds upon the theory that the petitioner had no minor child, while the record indicates the petitioner had one minor child. The pension is correctly figured on the correct basis.

The judgment of the circuit court is reversed and the award of the commission is confirmed.

*Judgment reversed, award confirmed.*