(No. 34680.—

PILLSBURY MILLS, INC., Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(RICHARD ROSCETTI, Plaintiff in Error.)

*Opinion filed May 21, 1958.*

W. H. BECKWITH, of Peoria, for plaintiff in error.

LONDRIGAN & LONDRIGAN, of Springfield, for defendant in error.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Richard Roscetti, an employee of Pillsbury Mills, Inc., filed with the Industrial Commission an application for adjustment of claim for an accidental injury. The parties

stipulated that on May 14, 1956, claimant sustained accidental injuries arising out of and in the course of his employment. The only dispute was as to the nature and extent of his injury. An arbitrator denied his claim for compensation. Upon review, the Industrial Commission awarded compensation benefits for forty weeks for the permanent twenty per cent loss of use of the left leg. The circuit court of Sangamon County set aside the decision of the commission upon the ground that it was contrary to the manifest weight of the evidence. We allowed claimant's petition for writ of error.

Claimant testified that on May 14, 1956, he was working in a clean-up crew on the loading floor of his employer's plant in Springfield handling 100-pound sacks of flour; that he and the other men in the crew were lifting two or three of these sacks at a time; that his back started to hurt about 1 :30 or 2 :00 o'clock in the afternoon; that a "heavy, terrific" pain extended down both hips and across the lower part of his back, and that he quit work for the day about 3 :00 P.M. A company nurse administered two heat treatments and sent claimant to a doctor who took X rays. He lost no compensable time on account of the accident. After May 14, he was assigned to different duties which did not require the lifting of heavy sacks. He testified that he suffered stiffness in the back, pain in both hips, stiffness all the time in the left leg, and pain in both legs, although the pain in the left leg was more severe than the pain in the right leg. A previous accident in 1953 had involved his back and right leg, but he had never experienced pain or stiffness in his left leg and hip before the accident of May 14, 1956.

Dr. Max F. Hersey examined claimant on August 13, 1956. His report stated that a physical examination showed a persistent finding of a slight degree of atrophy of the left calf muscle, slightly diminished reflexes of the left

knee and ankle, loss of normal lumbar sacral curve, a marked degree of muscular spasm involving the sacro spinalis, the inter spinalis and the inter transversarii muscles and pain posteriorally on straight leg elevation and extension of the left knee. The calf of the left leg was 1.2 centimeters smaller than the calf of the right leg. The report concluded: "It is my impression that this patient has a chronic and moderately severe back sprain. * * * The anatomical variations demonstrated in the X-ray studies suggest that this individual might be predisposed to back injury and for this reason, I think it inadvisable that he attempt to perform any work that might require heavy lifting. I would not expect any further improvement in this patient's condition." An X-ray report of Dr. Harold L. Shinall, also offered in evidence on behalf of the claimant, stated that minimal hypertrophic changes appeared in the thoraco-lumbar region.

The employer offered one medical report, and two physicians testified in its behalf. The medical report of Dr. Duane A. Willander dated July 18, 1956, stated that the physical examination, to the extent it pertained to the left leg, revealed that the gait was normal and that no limp was present; that the circumference of the calf of the right leg was one-quarter inch larger than the calf of the left leg. The report concluded, "X rays were substantially negative insofar as the leg was concerned, and the diagnosis was a mild spraining injury to the low back, with apparently slow but normal recovery."

Dr. David J. Lewis, who examined claimant on October 29, 1956, testified that claimant complained of a backache, aggravated by lifting and forward bending. He expressed the opinion, based upon his examination of four X rays and upon his own physical examination, that there was no objective evidence of disability at the time of the examination, and that claimant could carry on manual work

where he is required to lift weights of 25 to 30 pounds, but not in excess of 50 pounds. The X rays indicated curvature of the spine which he said could be caused by muscle spasms, but which in this case he attributed to an osteoarthritic condition or to "an insecurity of the hemipelvic length." He stated that the left leg was a little over half an inch shorter than the right leg, but he did not interpret that difference as indicating atrophy in the left leg, although "It could be * * * if there were other figures to substantiate the feeling that there was atrophy rather than difference in size."

Dr. Robert T. Patey testified that he examined claimant at the plant on May 21, 1956; that claimant was complaining of a pain low in the back, and aching and discomfort when he bent his back. Dr. Patey prescribed heat treatments at home and lighter work. He saw claimant again on seven later occasions in May, June, July and November, 1956. On May 28, Dr. Patey told claimant that he could go back to his regular work but to return if he had trouble. On June 18, claimant complained of discomfort. Dr. Patey did not make a complete examination, but instead asked claimant to see his associate, Dr. Woody, an orthopedic physician. Claimant then consulted Dr. Woody, who did not testify. When Dr. Patey next examined claimant on November 26, 1956, nine days before the hearing, he found that the back motions were normal and that the reflexes of the knees were equal and active. There appeared to be the normal lumbar curvature, and he found no difference between the circumference of the calves of the right and left legs. Dr. Patey added that in view of the continued symptoms of claimant's back it would be proper to continue to restrict his activity so that he would not lift 100-pound sacks. He advised claimant not to lift sacks weighing 100 pounds, to restrict his activities to lifting no more than 50 pounds, and not to be involved in any work which requires repeated bending or twisting.

The controlling question here was the nature and extent of the injuries admittedly sustained by claimant. On that issue the evidence of the medical witnesses was conflicting. Where, as here, decision depends upon which of two conflicting medical views is accepted, it is the function of the Industrial Commission to draw the inferences and to determine which testimony is entitled to the greater weight. (*ACF Industries, Inc.* v. *Industrial Com.* 8 Ill.2d 552; *Railway Express Agency* v. *Industrial Com.* 415 Ill. 294; *Quaker Oats Co.* v. *Industrial Com.* 414 Ill. 326; *Electro-Motive Division* v. *Industrial Com.* 411 Ill. 127.) Its decision upon a question of fact should not be set aside unless it is manifestly against the weight of the evidence. (*Esposito* v. *Industrial Com,* 12 Ill.2d 305; *ACF Industries, Inc.* v. *Industrial Com.* 8 Ill.2d 552; *Boutwell* v. *Industrial Com.* 408 Ill. 11.) The fact that more experts testified in the employer's behalf than for claimant is not controlling. *Cinch Manufacturing Corp.* v. *Industrial Com.* 393 Ill. 131.

All of the medical witnesses agreed that claimant could no longer do the work he had done before the injury. There was both subjective and objective evidence of an injury to the left leg. In our opinion the Commission's decision that the claimant had sustained a permanent loss of twenty per cent of the use of his left leg as the result of the injury on May 14, 1956, was not contrary to the manifest weight of the evidence, and should not have been set aside.

The judgment of the circuit court of Sangamon County is reversed and the decision of the Industrial Commission is confirmed.

*Judgment reversed; decision confirmed.*