(No. 35421.—

WILLIAM R. HENDREN, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(GLOBE IMPERIAL CORPORATION, Plaintiff in Error.)

*Opinion filed March 31, 1960.*

MILLER, THOMAS, HICKEY & COLLINS, of Rockford, (WILLIAM E. COLLINS, of counsel,) for plaintiff in error.

RUSSELL J. GOLDMAN, of Rockford, for defendant in error.

. Mr. JUSTICE BRISTOW delivered the opinion of the court:

This court has allowed the petition for writ of error filed by defendant Globe Imperial Corporation to review a circuit court judgment, which set aside the order of the Industrial Commission denying workmen's compensation to William R. Hendren, and reinstated the award of the arbitrator.

The sole issue submitted by the parties for review is whether the decision of the Industrial Commission, denying compensation for failure to establish a causal connection between the alleged accident and the employee's condition, was contrary to the manifest weight of the evidence and was properly set aside by the circuit court.

From the record it appears that William R. Hendren, hereinafter referred to as plaintiff, was employed by the defendant, Globe Imperial Corporation, a manufacturer of plastic and aluminum castings, and participated on June 6, 1956, on an industrial league baseball team sponsored by the defendant corporation. In connection with his participation on the team, plaintiff testified that no effort was made by the defendant to coerce him to join the team, and that his joining would not help his advancement. He also stated that the defendant allowed time off from work for players working on the night shift; that the defendant bought the employees tickets for the annual banquet of the Rockford Industrial League, and displayed team trophies in the shop; and that the vice-president attended all the games in which the corporation's team participated.

In the course of playing shortstop on the above date, plaintiff threw the ball from third to first base, as he had done on other previous occasions, but as he did so he experienced a pain in his right shoulder. In his words, "my right shoulder went out with me." He was immediately taken to the hospital, and a Dr. Dee bandaged his arm and shoulder. He had to remain at home the following two weeks and then returned to work. According to his further testimony,

the shoulder went out again on two other occasions during the ensuing six months. Plaintiff reported this to Dr. Dee, who, on February 5, 1957, performed a Bankhart operation to prevent "recurring dislocation." Plaintiff was hospitalized for some 16 days, and was out of work for some 40 days.

With reference to his physical condition, plaintiff submitted the testimony of Dr. Hardin in the proceeding before the arbitrator, and introduced, by stipulation, the report of Dr. Dee at the hearing on review. Dr. Hardin testified that he examined plaintiff on April 22, 1957, and on October 17, 1957, and had X-rays taken on October 16, 1957. These examinations revealed a 6½-inch scar over the front of plaintiff's right shoulder, some visible atrophy of the muscles around the shoulder, weakness in all of the right shoulder movements, and specified degrees of limitation of movement of the right arm. The X-rays showed the steel staple in the neck of the scapula with some absorption of bone and a 13-mm. screw in the tip of the coracoid process. Dr. Hardin concluded from his examination that plaintiff sustained a dislocation of the right shoulder; that he has sustained permanent injury, and that the present condition of plaintiff's shoulder is not normal.

Dr. Dee's report referred to a post-operative examination on April 25, 1957, in which he found that plaintiff still had pain and discomfort and difficulty in certain motions; that there was approximately 40 to 50 per cent restriction of passive external rotation and 5 to 10 per cent restriction of internal rotation of the shoulder joint; that the surgical scar was well healed; and that the X-ray showed evidence of a metallic screw and staple in the shoulder area, inserted at the time of surgery, along with some bone absorption about the tips of the staple. The report stated that the diagnosis was recurring dislocation of the shoulder, and that in his opinion the patient has obtained a very satisfactory result from the surgery, since one of the

aims of the Bankhart operation is to restrict some degree of external rotation to prevent recurring dislocation.

Plaintiff testified that he has an "aching all the time in back of his shoulder;" that he hasn't the use of his shoulder, and can use his arm as long as he doesn't raise his elbow above his shoulder; and when he lifts his arm up to a certain angle it aches. He is presently working for Barber-Coleman, operating an automatic hobb sharpener. He further testified on review that his arm has become weaker since January 7, 1958, that he has to "roll over easy in bed," and has pain when he "uses his arm a lot."

On the basis of substantially the foregoing evidence, the arbitrator on January 16, 1958, entered an award for $40 per week for 141 weeks for the permanent 60 per cent loss of use of the right arm. The Industrial Commission, on review, denied the claim for compensation on the ground that petitioner failed in the burden of proof to establish a causal connection between the accidental injury of June 6, 1956, and his present condition of ill-being.

On writ of *certiorari,* the circuit court set aside the decision of the Industrial Commission on the ground that it was contrary to the manifest weight of the evidence, and reinstated the award of the arbitrator.

In determining the propriety of that judgment, it is evident that the issue herein of whether plaintiff established a causal connection between the accidental injury and the condition for which compensation is sought is ordinarily a question of fact. (*A. C. F. Industries Inc.* v. *Industrial Com.* 8 Ill.2d 552; *Pillsbury Mills Inc.* v. *Industrial Com.* 14 Ill.2d 23.) Under the principle reiterated in our case law, the findings of the Industrial Commission upon such questions of fact will not be disturbed, unless they are manifestly against the weight of the evidence. *Town of Cicero* v. *Industrial Com.* 404 Ill. 487; *Gudeman Co.* v. *Industrial Com.* 399 Ill. 279.

In applying this principle to the case at bar, it is un-

disputed that plaintiff's shoulder "went out" when he threw the ball while participating on the defendant's baseball team; that he was immediately taken to the hospital, where his shoulder, which was apparently dislocated, was bandaged by a Dr. Dee; that plaintiff had to remain off work for several weeks immediately after the accident; and that some seven months later, after two recurring dislocations, plaintiff, at the suggestion of Dr. Dee, underwent surgery to prevent "recurring dislocation" of his shoulder, and presently has certain permanent limitations on the use of his arm.

From this sequence of events and from the nature of the injury sustained by plaintiff, it is evident that there was a causal connection between plaintiff's accidental injury of June 6, 1956, and his present condition for which compensation is sought. Moreover, that causal connection is substantiated, rather than severed, as defendant suggests, by the recurring dislocations. There was no necessity under the circumstances to propound a hypothetical question to connect plaintiff's condition with the accident. Although such questions are common in workmen's compensation litigation, they are not a magic or indispensable formula for establishing the requisite causal connection.

Furthermore, since defendant offered no evidence, and the record is devoid of any conflicting testimony, lay or expert, as to plaintiff's condition or its cause, the case at bar is distinguishable, and in sharp contrast to the cases cited by defendant, where the Industrial Commission had to determine which group of experts or lay witnesses were more worthy of credence. (*American Smelting and Refining Corp.* v. *Industrial Com.* 13 Ill.2d 275; *Electro-Motive Division, General Motors Corp.* v. *Industrial Com.* 411 Ill. 127; *Rittler* v. *Industrial Com.* 351 Ill. 338.) In the instant case there is not a scintilla of evidence from which any other inference could be drawn by the Industrial Commission than that plaintiff's condition was caused by the

accident he sustained on June 6, 1956. Consequently, the decision of the Industrial Commission that plaintiff failed to establish a causal connection between the accidental injury and his present condition is clearly contrary to the manifest weight of the evidence, and was properly set aside by the circuit court.

Defendant argues further that the circuit court erred in awarding compensation in the amount designated by the arbitrator. Defendant apparently overlooks the fact that the arbitrator's findings and award were based upon the medical testimony of Dr. Hardin, which described in detail the degree of permanent limitation of movement of plaintiff's right arm. While the arbitrator's findings are not binding upon the Industrial Commission, which has original jurisdiction of cases brought before it on review, (*American Smelting and Refining Corp.* v. *Industrial Com.* 13 Ill.2d 275,) nevertheless, the arbitrator's decision is not without legal effect. It has been held to provide the basis for the entry of a judgment by the circuit court, (*St. Louis Pressed Steel Co.* v. *Schorr*, 303 Ill. 476,) and to be *res judicata* of the rights of the parties. (*Black* v. *Industrial Com.* 393 Ill. 187; 2 Angerstein, Illinois Workmen's Compensation, 400-402.) Hence, the arbitrator's findings and award may be relied upon and sustained by the circuit court when it finds that the decision of the Industrial Commission was against the manifest weight of the evidence.

It is therefore our opinion that the order of the circuit court, setting aside the decision of the Industrial Commission and reinstating the award of the arbitrator, was proper and in accordance with the terms and provisions of the Workmen's Compensation Act.

*Judgment affirmed.*