(No. 36154.—

MECHANICS UNIVERSAL JOINT DIVISION, BORG-WARNER CORPORATION, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(RUSSELL A. GLADFELDER, Plaintiff in Error.)

*Opinion filed March 29, 1961.*

KATZ & FRIEDMAN, of Chicago, and RUSSELL J. GOLD-MAN, and ROALD A. JACOBSEN, both of Rockford, (JEROME SCHUR, and ARTHUR BRODY, of counsel,) for plaintiff in error.

LARGE, RENO, ZAHM, & FOLGATE, of Rockford, (RALPH S. ZAHM, of counsel,) for defendant in error.

Mr. JUSTICE DAILY delivered the opinion of the court:

Writ of error has been granted by this court to review a judgment of the circuit court of Winnebago County which set aside an award of the Industrial Commission for permanent injuries allegedly sustained by Russell A. Gladfelder, herein called petitioner, in the course of his employment by Mechanics Universal Joint Division, Borg-Warner Corporation, herein referred to as respondent.

It appears that the forty-one-year-old petitioner had for many years been employed by respondent as a "stock chaser," the performance of which employment required

him to walk as much as twenty miles a day gathering material from various parts of the factory. While so engaged on September 14, 1955, he was instructed to remove certain tubing from a warehouse where it was stacked in piles some five feet high. After climbing upon the top of the pile, Gladfelder proceeded to select the correct stock but in so doing his feet slipped upon the oily tubing and he fell upon his knees, experiencing pain in both his back and knees and a sensation later described by him as being "like somebody hit me right up here in the back with a blunt object." Petitioner immediately reported the occurrence to his foreman, who referred him to the company nurse, and later he was examined by the company doctor. Petitioner's condition deteriorated to such an extent that he ceased work on September 26 and, upon the advice of the company doctor, was hospitalized on October 3, 1955, in a Rockford hospital and thereafter at the Hines Veteran's Hospital where he remained until March, 1956.

Application for benefits under the Workmen's Compensation Act was subsequently denied by the arbitrator, but after hearing further testimony the Industrial Commission awarded petitioner the sum of $9750 payable over a 279-week period together with a lifetime pension of $65 per month. However, upon review the circuit court of Winnebago County set the award aside and remanded the cause for further proceedings to the Industrial Commission which again found for petitioner and granted an award substantially as before. From a judgment of the circuit court setting aside the second award, the present review was sought. During all this time, Gladfelder has been unable to work and is now totally and permanently disabled.

Although there is no question as to the gravity of petitioner's present condition, respondent contends there was no causal connection between such condition and the September 14th occurrence so as to warrant the Commission's

award and that the circuit court was therefore correct in setting it aside.

We have stated many times that the determination of disputed questions of fact in Workmen's Compensation cases, including one of causal connection, is primarily a function of the Industrial Commission, and that its findings should not be disturbed by a reviewing court unless they are manifestly against the weight of the evidence, regardless of how the judiciary itself might have held had it been trier of the facts. (*Inland Steel Co.* v. *Industrial Com.* 18 Ill.2d 70; *Plano Foundry Co.* v. *Industrial Com.* 356 Ill. 186; *Hendren* v. *Industrial Com.,* 19 Ill.2d 44.) Where the evidence is conflicting, or of such a nature that different inferences may be reasonably drawn therefrom, it is for the Commission to determine where the preponderence lies (*Electro-Motive Div., General Motors Corp.* v. *Industrial Com.* 411 Ill. 132; *ACF Industries, Inc.* v. *Industrial Com.* 8 Ill.2d 552;) if, however, there is no substantial evidence to support an award, it is the court's duty to set it aside. (*R. G. Le Tourneau, Inc.* v. *Industrial Com.* 396 Ill. 435.) With these principles in mind we must now examine the evidence of causal connection in the present case.

A number of medical experts expressed opinions concerning the issue. Dr. Francis Sauer, referred to herein as the company doctor, stated that on September 20, 1955, Gladfelder complained of pain in the lower back and numbness in his legs, and a subsequent examination revealed diminished reaction in the lower extremities, exaggerated knee reflexes, ankle clonus, and loss of abdominal reflexes. As a result, Sauer diagnosed the ailment as multiple sclerosis and referred petitioner to Dr. Robert L. Anderson, a neurosurgeon.

Anderson testified that on September 27, 1955, he noted a diminished reaction to pain and pressure in both lower extremities below the groin, absence of abdominal reflexes, involuntary oscillation of the eyes, and an unsteady gait,

and a subsequent examination of petitioner's spinal fluid revealed an abnormal number of lymphocytes, thus indicating a lesion in the brain stem.' Based upon these findings, he was of the opinion that Gladfelder was suffering from multiple sclerosis and that his condition was not affected by trauma.

Another of respondent's witnesses, Dr. Roland Mackay, a neurologist and psychiatrist, although having never seen the petitioner, stated in answer to a hypothetical question that in his opinion there was no causal connection between the September 14th occurrence and Gladfelder's condition, which he described as multiple sclerosis. Factors considered by this witness in rendering his opinion were the absence of bruises upon the knees, petitioner's continued employment for several days after the fall, the absence of evident abnormalities in the spinal canal, the varying of levels indicating a number of lesions, and a prior history of back disorders commencing in 1952, although he did admit the latter could have resulted from matters entirely unrelated to the present disease. A somewhat similar conclusion was reached by Dr. Edward Clark, a specialist with the Mayo Clinic, and Dr. John VanLandingham, an attending physician.

Dr. Eric Oldberg, testifying for respondent, was also of the opinion that Gladfelder was suffering from multiple sclerosis which would have been unaffected by trauma. On cross-examination, however, he made the following observations : whereas multiple sclerosis is characterized by periods of exacerbation and remission, petitioner's condition remained somewhat static; the entire involvement could be explained by a single, as opposed to multiple, lesions; gross trauma would not be good for a multiple sclerosis patient; that it was sheer coincidence that multiple sclerosis commenced immediately following the September 14th occurrence; and that the patient showed marked improvement following surgery upon the spinal canal.

In testifying for the petitioner, Dr. Benjamin Boshes, a neurologist and psychiatrist at Hines Veteran's Hospital, stated that as a result of examinations performed by him upon petitioner from February, 1956, until May, 1957, he was of the opinion that petitioner was suffering from a single traumatic lesion of the spinal cord and that the injury could have resulted from Gladfelder's falling upon the metal tubing. He discounted the possibility of multiple sclerosis since his testing did not disclose the characteristic symptoms of that affliction. However, when later called as a witness for respondent, Boshes had conducted further examinations through December, 1958, as the result of which he changed his diagnosis from traumatic spinal lesion to multiple sclerosis. Nevertheless, in then answering the hypothetical question concerning causation, Boshes stated that the fall may have produced some impact upon the central nervous system which caused the neurological change that followed, that it may have aggravated a pre-existing ailment, that it may have merely caused an awareness of a present affliction, or that the fall itself may have resulted because of limited co-ordination arising from an existing illness. In view of the fact that until January, 1958, the symptoms could be explained on the basis of a single lesion, it was suggested that Gladfelder had possibly suffered from a traumatic condition following the fall and only later contracted multiple sclerosis, although Boshes did not subscribe to this view.

Dr. Alex J. Arieff, neurologist and psychiatrist, also testified for both parties. When first called by petitioner he expressed the opinion, based upon facts contained in a hypothetical question, that petitioner suffered a vascular disorder of the spinal cord in his fall upon the metal tubing, and that there might or could have been a causal connection between this injury and Gladfelder's subsequent state of health. He dismissed the possibility of multiple sclerosis because symptoms then apparent, such as the presence of pain, defective pain sensibility, and the spinal thalmic in-

volvement, are rarely associated with that disease. At a later hearing and in answer to a hypothetical question propounded be respondent incorporating symptoms revealed by Dr. Boshes's subsequent examinations, Arieff stated the belief that Gladfelder was then suffering from both a vascular injury occasioned by the September 14th fall and multiple sclerosis. This statement was based upon the fact that the latter disease would not account for symptoms occurring immediately after September, 1955, such as pain and sensory loss in the anterior portion of the spinal cord. He was also of the opinion that trauma could not itself cause the ailment but that it could injure the spinal cord or circulatory system in such a manner as to aggravate an existing multiple sclerosis condition.

Although highly conflicting in nature, we believe there was sufficient evidence, if believed by the Commission, to warrant the granting of an award to the petitioner. In testifying for both the petitioner and respondent, Dr. Arieff maintained that Gladfelder may have suffered a vascular injury to the spinal cord by reason of the September 14th occurrence and that this could have been responsible for or contributed to the employee's present condition. Even though he diagnosed the condition as multiple sclerosis, Dr. Boshes added that the fall might have been responsible for the subsequent neurological change or it may have aggravated a pre-existing ailment, and Dr. Oldberg, although attributing the fall and concurrent commencement of multiple sclerosis to sheer coincidence, admitted that petitioner's condition could be explained by the presence of a single vascular lesion. It is true that the medical experts were somewhat cautious in their opinions, but as was pointed out in *Quaker Oats Co.* v. *Industrial Com.* 414 Ill. 326, where the disease is subject to only limited medical knowledge, as is multiple sclerosis, the causation issue could hardly permit an unqualified and unequivocal answer. Under these circumstances and from the evidence produced upon hearing,

542

we believe the Commission could reasonably conclude that the fall either caused the neurological change or aggravated a pre-existing condition, either of which would be compensable. (*Weil-Kalter Mfg. Co.* v. *Industrial Com.* 376 Ill. 48; *Ceisel* v. *Industrial Com.* 400 Ill. 574.) Although a case of first impression in Illinois, we note with interest that the courts of at least three other States have heretofore upheld workmen compensation awards for aggravation of multiple sclerosis by industrial accidents. *Hebert* v. *Fifteen Oil Co.* (La. 1950) 46 S.2d 328; *Blackburn* v. *Coffeyville Vitrified Brick and Tile Co.* 107 Kan. 722, 193 Pac. 351; *Schust* v. *Wright Aeronautical Corporation,* 7 N.J. Super, 54, 71 A.2d 894.

For the reasons stated, the judgment of the circuit court of Winnebago County is reversed and the award of the Industrial Commission in favor of petitioner is confirmed.

*Judgment reversed; award confirmed.*