(No. 36855.—

FRANK SIETE, Plaintiff in Error, *vs.* INDUSTRIAL COMMISSION *et al.*—(WOODRUFF & EDWARDS, INC., Defendant in Error.)

*Opinion filed March 23, 1962.*

EUGENE T. DEVITT, of Chicago, (SIDNEY Z. KARASIK, of Chicago, of counsel,) for plaintiff in error.

HENRY L. KANE & ARTHUR O. KANE, of Chicago, for defendant in error.

Mr. CHIEF JUSTICE HERSHEY delivered the opinion of the court:

The Industrial Commission set aside an award for death benefits entered by the arbitrator in favor of claimant Frank Siete, a minor, for the death of his brother while employed by defendant Woodruff & Edwards, Inc., on the ground that claimant was not a dependent under the terms of the Workmen's Compensation Act. On *certiorari* the city court of Elgin held that finding to be manifestly against the weight of the evidence, and remanded the cause to the Commission for further evidence on the issue of a causal connection between the accidental injury and death. The Industrial Commission reconsidered the entire cause and denied compensation death benefits on the ground that decedent's injury did not arise out of and in the course of his employment. On a second writ of *certiorari* taken by claimant, the circuit court of Kane County confirmed both decisions of the Industrial Commission, and this court has allowed claimant's petition for a writ of error.

The essential issues are whether decedent's death was caused by an accidental injury arising out of and in the course of his employment, and whether the claimant, Frank Siete, was a dependent of the decedent within the terms of section 7(d) of the Workmen's Compensation Act. Ill. Rev. Stat. 1953, chap. 48, par. 138.7(d).

From the record it appears that on February 17, 1955, the decedent, Rupert Siete, age 19, was working the night shift in the foundry of defendant Woodruff & Edwards, Inc., at Elgin, Illinois. He worked at a heavy machine called a "slinger," which ran on tracks and was equipped with long blades that scooped up sand. There were no eyewitnesses to decedent's alleged accident, but the claimant adduced certain circumstantial evidence. Two co-workers

testified they saw Rupert at his machine between 11:30 P.M. and midnight. According to company records, Rupert was also seen by the night watchman around midnight hurrying toward his machine carrying a wrench. At 12:30 A.M. Rupert was found lying unconscious beside his machine and bleeding from his head. There was blood on the side of the machine, on the clamp at the front of the machine, on the floor, and on decedent's face. He was taken by the police to the hospital in an ambulance. Immediately thereafter, according to the testimony of the co-workers, there was a conversation between the foreman, the mechanic and the personnel manager. The mechanic then worked on decedent's machine for about half an hour, after which "the machine started up again." At 2:30 A.M. the claimant and his older brother Cayetano came to the foundry. The foreman, in relating the occurrence to them referred to the "accident," and showed them the blood in the area and on decedent's machine.

The medical testimony and hospital records were not introduced at the first hearing. There was testimony, however, that decedent was found unconscious, that he died the following day in the hospital, and that he had previously been in good health, including the night of the alleged accident.

With respect to the issue of dependency, the evidence showed that claimant's mother died in 1941, when he was three years old, and his father died in 1948, when he was ten. He and his four older brothers lived with their sister, Mrs. Rafaela Perez, who supported them until the older ones began working. Rupert, the decedent, went to work for the defendant company in 1953 and contributed $40 each bi-weekly pay period to the family food fund. He also bought all of the clothes for his younger brother, Frank, the claimant herein, and gave him an allowance of $4 or $5 each week for lunches and spending money. Rupert paid $10.71 for Frank's school accident insurance, and 41 cents

a week on Frank's life insurance policy. Frank's school tuition of $50 was paid by the church, in return for which Frank cleaned up around the school grounds.

Decedent's contributions to the support of his younger brother were attested to by the sister, Rafaela, the brother Cayetano, and by the claimant himself. In addition, the floor manager of J. C. Penney Co., who knew the boys as customers, testified that Rupert made frequent purchases of clothing for Frank, such as shirts, socks, underwear and pants, which Frank selected, and that during 1954 these purchases amounted to about $15 or $20 a month. There was also testimony that decedent bought Frank a suit for $60 at another store.

It appears further from the testimony that at the time of decedent's death, the household consisted of the sister, Rafaela Perez, her husband, their baby daughter, and the five brothers. They lived in a house which the sister inherited from her parents. During the preceding year her husband earned about $3,000, from which he sent $40 a month to his family in Mexico, contributed $50 toward the food, and paid other household expenses. Cipriano, the oldest brother, contributed nothing, since he had been in the armed forces and also had a wife and baby to support. Domingo was "slow" and didn't work. Cayetano and Rupert each contributed $40 a pay period toward the food, until December, 1954, when Cayetano was ordered into army service and had to discontinue his payments. Rupert then increased his contributions by $10 or $15. Although Frank was still in school, he had worked part time after school for about 23 days before decedent's death, and from his earnings he made two contributions to the family, one for $25 and one for $20. It was stipulated that he stopped working after school immediately after the accident, because he was fearful of an accident to himself and because Father Rojian did not want a boy going to school to work at such hard manual labor.

There was also evidence that in June, 1951, before decedent started working and while he was still in school, the older brother, Cayetano, listed Frank as an exemption on his income tax record. Cayetano explained that this record was not changed when Rupert went to work in 1953 because it was too much trouble, but that it was Rupert who bought all of Frank's clothes and gave him spending money. There was also evidence that Rupert was making payments on a car.

No evidence was offered by the defendant company, either at the hearing before the arbitrator or at any subsequent hearing.

The arbitrator found that decedent sustained accidental injuries arising out of and in the course of his employment, and that the claimant, a minor brother, was more than 50% dependent for support on the earnings of the decedent; and entered an award of $7,125 in favor of the claimant.

Without further evidence by either party, the Industrial Commission on review set aside the award on the ground that there was no one dependent upon decedent. It ordered defendant to pay burial expenses not to exceed $500, and to pay $400 into the special fund under section 7(f) of the Workmen's Compensation Act.

On writ of *certiorari,* the city court of Elgin on January 27, 1956, held that the finding of the Commission on the issue of dependency was against the manifest weight of the evidence, and remanded the cause to the Commission with directions to hear additional evidence to determine whether there was a causal connection between the accidental injuries and death, and if so, to render an award in accordance with the decision of the arbitrator.

At the hearing before the Commission pursuant to the remanding order, plaintiff introduced the hospital records and the testimony of the treating physician, who was the doctor for the defendant company. The hospital records recited that the patient was unconscious on arrival, had a

skull fracture, brain concussion, and scalp laceration four inches long. Under "description of accident," the record indicated he "fell into machine." The physician, Dr. Zimmerman, testified to a diagnosis of skull fracture. He explained that the history of an accident could have been given to him by the defendant's foreman, who often called him on such matters, or by the police. After X ray and tests, he performed surgery, assisted by another doctor, and the patient died the next day. It was his opinion, with a reasonable degree of medical certainty, that the injuries caused the death. He also testified that decedent's pre-employment examination in June, 1953, indicated that Rupert was in "good health."

No further evidence was offered. The Industrial Commission entered an order on October 21, 1960, finding that Rupert Siete did not sustain accidental injuries arising out of and in the course of his employment and denied compensation.

Plaintiff again filed writ of *certiorari* to the city court of Elgin. Defendant obtained a change of venue to the circuit court of Kane County, which confirmed both decisions of the Industrial Commission and held that their findings were not against the manifest weight of the evidence.

In reviewing this record it is readily apparent that the Industrial Commission in its second decision exceeded the scope of the remanding order. It was directed only to determine whether there was a causal connection between the accidental injuries and death, and evidence was offered only on that issue. Nevertheless, the Commission reconsidered the entire case and reversed its finding on the existence of an accidental injury arising out of and in the course of employment.

Inasmuch as the circuit court reviewed that issue, and since the entire record is before this court and the parties

have submitted arguments thereon, we shall first consider that basic issue.

As previously noted, the evidence pertaining to the alleged accident is entirely circumstantial. This court has repeatedly held that the fact that an injury resulting in death arose out of the employment need not be proved by direct evidence, but may be established by circumstantial evidence leading to a logical and reasonable inference that the injury originated in a risk of the employment. *Hunter Packing Co.* v. *Industrial Com.,* 1 Ill.2d 99; *Jefferson Ice Co.* v. *Industrial Com.,* 404 Ill. 290; *Grola* v. *Industrial Com.* 388 Ill. 114.

There is certainly a reasonable and legitimate inference from the undisputed circumstantial evidence that decedent sustained an accident in connection with the operation of his slinger machine. The fact that he was in good health prior to the accident; that he was seen operating the machine with its long blades around midnight, shortly before the alleged accident, and also seen hurrying toward it with a wrench around that time; the fact that decedent was found shortly thereafter, lying unconscious and bleeding beside his machine, which had blood over it; the nature and severity of the injuries, which included a four-inch scalp laceration and a skull fracture; the fact that a mechanic worked on the machine for about half an hour before it started up again; and that the foreman referred to "an accident" in describing to decedent's brothers what happened, all substantiate the cogency of that inference. Furthermore, defendant offered no evidence either rebutting that inference or giving rise to any other possible cause of death, factors which we emphasized in *Hunter Packing Co.* v. *Industrial Com.* 1 Ill.2d 99. In addition, the medical testimony and hospital records certainly established a causal connection between that accidental injury and the ensuing death the next day.

Under such circumstances, where there is a legitimate inference from the evidence that decedent died from an injury which arose out of his employment, the law does not require claimant to "negative every possibility that death might have arisen other than out of the employment." *Clifford-Jacobs Forging Co.* v. *Industrial Com.* 19 Ill.2d 236, 245.

It is therefore not clear to this court just why the Industrial Commission changed its initial finding that decedent sustained an accidental injury arising out of his employment, particularly after claimant submitted the additional medical testimony, which in fact bolstered his case.

Nor is that unauthorized finding required or even supported in any way by the case law. Defendant relies upon *Prince* v. *Industrial Com.* 15 Ill.2d 607. There the decedent sustained a fatal injury when he fell on a concrete floor while suffering a seizure from an idiopathic condition, and the court held that since the floor presented only risks confronted by. the general public, the injury from the fall could not be deemed to raise out of the employment. That case is hardly analogous, since decedent herein had no such idiopathic condition, and the circumstantial evidence indicated that the accident occurred in connection with the operation of a heavy slinger machine with blades, involving risks quite different from those of an ordinary concrete floor.

The other cases cited by defendant, involving a street shooting and violence by outsiders certainly have no relevancy to the case at bar. *Borgeson* v. *Industrial Com.* 368 Ill. 188; *Chicago Harware Foundry Co.* v. *Industrial Com.* 393 Ill. 294.

It is therefore our judgment from this review of the record and cases that the finding of the Industrial Commission in its second decision, that decedent did not sustain accidental injuries arising out of and in the course of his

employment, was manifestly contrary to the weight of the evidence.

However, to be entitled to death benefits, claimant, as brother of the decedent, had to establish not only that there was a compensable injury, but that he was at least 50% dependent upon decedent's earnings as specified in section .7(d) of the Workmen's Compensation Act. Ill. Rev. Stat. 1953, chap. 48, par. 138.7(d).

Dependency has been held to be a question of fact upon which the findings of the Commission are binding, unless they are manifestly against the weight of the evidence. The test promulgated by this court to determine dependency is whether the contributions of decedent were relied upon by the applicant for his means of living as determined by his position in life. (*General Construction Co.* v. *Industrial Com.* 314 Ill. 58, 63; *France Stone Co.* v. *Industrial Com.* 369 Ill. 238, 241.) We have held that it is not necessary that the dependent be able to demand support as a matter of law; or that claimant would have been without the necessities of life, or without means of support. Nor is it fatal to his claim of dependency that he has other means of partial support. *Crane Co.* v. *Industrial Com.* 378 Ill. 190; *General Construction Co.* v. *Industrial Com.* 314 Ill. 58; *France Stone Co.* v. *Industrial Com.* 369 Ill. 238; *Pratt Co.* v. *Industrial Com.* 293 Ill. 367.

In judging the findings of the Industrial Commission on this issue it is pertinent to ascertain the tenor of the decisions. In *Crane Co.* v. *Industrial Com.* 378 Ill. 190, a girl of 15 was deemed a dependent of her deceased brother, who contributed sums for her clothing and paid part of her board to her father, who had earning capacity and also received board money from other members of the family residing in the home.

In *France Stone Co.* v. *Industrial Com.* 369 Ill. 238, a young woman of 20 was deemed a dependent of her de-

cedent uncle who lived with the family and had purchased her clothes and given her spending money, notwithstanding the fact that she lived with her parents, that her father was employed and owned a two-flat building from which there was income.

In *General Construction Co.* v. *Industrial Com.* 314 Ill. 58, an employed father who earned money was deemed a . dependent of his minor son, who gave him part of his earnings to be applied to their living expenses. In both *Pratt Co.* v. *Industrial Com.,* 293 Ill. 367, and *Peabody Coal Co.* v. *Industrial Com.* 311 Ill. 338, a mother was deemed the dependent of a decedent son who made contributions to the family even though she also received some support from her employed husband. However, in *Yellow Cab Co.* v. *Industrial Com.* 333 Ill. 49, cited by defendant, dependency was denied where the circumstances showed not only that the mother was supported by her husband, but that the family had a substantial surplus from their farm produce, and that the son was "broke" most of the time.

In *Rock Island Bridge and Iron Works* v. *Industrial Com.* 287 Ill. 648, dependency was denied on the ground that the money contributed to decedent's mother was not given or used for her support alone, but was a general benefit to the family. That case is hardly a determinative authority, as defendant insists, since the decedent in the instant case contributed sums directly to and for the exclusive benefit of the claimant.

The dependency of claimant is based upon the evidence that decedent bought him all his clothes, gave him a weekly allowance of $5, paid his accident and life insurance, and helped pay for his food by contributing at least $80 a month to the family food fund. The clothing purchases were corroborated by the testimony of the floor manager of J. C. Penny Company. Furthermore, the plausibility of decedent's partial support of his younger brother was enhanced by the fact that their parents were dead, and by the evidence

of the family's mode. of living and their strained financial situation.

While partial dependency cannot be computed with mathematical precision, that evidence certainly indicated, and the arbitrator so found, that claimant depended upon his brother for more than 50% of his support. That undisputed evidence could not properly be disregarded by the Industrial Commission. In *Crane Co.* v. *Industrial Com.* 378 Ill. 190, we stated at p. 193: "In the record before us there is no testimony produced by plaintiff in error in opposition to that of the person claiming compensation ·upon the question of dependency. No case has been called to our attention where we can wholly disregard testimony merely because it presents an unusual or possibly an unlikely situation."

Nor would claimant's receipt of two checks for part time work after school bar his being a dependent, as defendant insists. Such reasoning is not only unrealistic, but is in plain conflict with our decision in the aforementioned case of *General Construction Co.* v. *Industrial Com.* 314 Ill. 58, holding the employed father to be a dependent. We specifically stated at p. 63 that "Partial dependency may exist even though the claimant could have subsisted without the decedent's contributions." Moreover, we find the evidence of dependency in the instant case more compelling than that held sufficient in *Crane Co.* v. *Industrial Com.* 378 Ill. 190, for Frank Siete, the claimant, had no living parent obligated to support him, as did the claimant in that case.

Under this analysis it is our judgment that the decisions of the Industrial Commission were not only contrary to the manifest weight of the undisputed evidence, but contrary to the tenor of our decisions. Therefore, the judgment of the circuit court confirming those decisions should be reversed. Under these circumstances the award of the arbitrator should be reinstated. *Hendren* v. *Industrial Com.* 19 Ill.2d 44; Ill. Rev. Stat. 1959, chap. 110, par. 92 (1)(e).

*Judgment reversed; award reinstated.*