(No. 44788.—

ED RAY *et al.*, Appellants, v. THE INDUSTRIAL COM—
MISSION *et al.*—(Kathryn Rodenski, Appellee.)

*Opinion filed May 22, 1972.*

GIFFORD, RODDY, POWER & DETUNO, of Chi-
cago, for appellants.

MORRISON & NEMANICH, of Waukegan (DONALD
T. MORRISON and TERRENCE J. BRADY, of counsel),
for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion
of the court:

An arbitrator for the Industrial Commission awarded
the petitioner, Kathryn Rodenski, compensation for total
and permanent disability as the result of an injury suffered
while in the employ of the respondents, Ed and Kay Ray.
On review the Industrial Commission, without hearing
additional testimony, reversed the decision of the arbitra-
tor and awarded the petitioner compensation for the total
and permanent loss of the use of her right leg. On
*certiorari* the circuit court of Lake County holding that
the decision of the Industrial Commission was "clearly
contrary to the manifest weight of the evidence" reversed

the Commission's decision, ordered the award of the arbitrator reinstated and from that judgment respondents appeal.

The parties are in agreement that the sole issue presented is whether the trial court properly found the decision of the Industrial Commission to be contrary to the manifest weight of the evidence.

The testimony shows that petitioner was employed by the respondents as a general housekeeper and cook on their farm in Lake County. On Monday, January 6, 1964, while doing some laundry, she slipped and fell to the concrete floor. She called her employers' city residence and left word that she had been injured. She was assisted to her car and drove home and did not return to the farm until Friday. She worked for several hours preparing the house for her employers' arrival to spend the weekend and did not return to the farm until the following Thursday, January 16, 1964. As she was walking from her car to the back door of the house her leg "caved in" and she fell to the ground. She could not move her right leg and suffered intense pain in the leg and lower back. Two of the men who worked on the farm took her to Condell Memorial Hospital where she was treated by Dr. Penn, a surgeon. Dr. Penn did not testify but his reports, admitted into evidence, show that on January 16, 1964, he made a diagnosis of a "completely displaced, subcapital fracture of the right hip." His examination also revealed "shortening and marked external rotation of the right lower extremity." He performed an open reduction of the fracture and inserted a Smith-Petersen nail. She was discharged from the hospital on March 19, 1964.

She was readmitted to the hospital on July 13, 1964. She had not returned to work and had complained intermittently of right leg and back pain. Upon admission to the hospital a diagnosis was made of "arthralgia, right hip" and X-ray studies disclosed that the Smith-Petersen nail had extruded beyond the joint surface of the femoral

head. She was placed in traction and remained in the hospital, in traction, until August 9, 1964. She continued to complain of pain and an X-ray examination on September 17, 1964, showed that the nail had extruded further into the joint space. She continued to complain of pain and was readmitted to the hospital on November 1, 1964. Dr. Penn removed the old nail, replaced it with a new shorter nail and she was discharged on November 8, 1964.

On December 5, 1964, she was seen again at the hospital. Dr. Penn noted loss of motion in the hip and prescribed that she continue to use crutches.

X rays made on February 13, 1965, showed "mushrooming" of the femoral head and an X ray made on April 14, 1965, showed that the femoral head was beginning to assume the chalky appearance indicative of early asceptic necrosis. On July 27, 1965, she was admitted to St. Therese Hospital where Dr. Penn and an associate performed a cup arthroplasty on the right hip. Subsequent physical therapy did not improve the pain in her hip and back. Dr. Penn and his associate, Dr. Mauer, saw her periodically until October, 1967, when he told her that there was nothing more that he could do for her and "she would have to live with her condition." Her employers' workmen's compensation insurer then referred her to Dr. Pease, an orthopedic surgeon. On July 23, 1968, Dr. Pease performed an "intrapelvic extraperitoneal obturator nerve section" on the right side. The purpose of this operation was to relieve the pain in the hip area but she continued to suffer pain after the operation. Dr. Pease prescribed shoe lifts for Mrs. Rodenski's right foot and advised her that she required no further medical care.

Dr. Fraerman, an orthopedic surgeon, first saw Mrs. Rodenski on February 18, 1969. His examination revealed a "grossly mutilated" hip joint with almost total stiffness. He made a final diagnosis of a post-operative partial ankylosis of the right hip with flexion contractures and

herniation of the nucleus pulposus with severe degenerative changes between L—5 and S—1. He stated further that Mrs. Rodenski, without further surgery, was a "total invalid." He recommended surgery to "revise" the hip and thought that this would enable her to make some recovery, but would still leave great shortening and probably a severe limp.

The claimant testified that she had not worked since the accident of January 16, 1964. She had continued to have a great deal of pain, had been given physical therapy and was taking medication in order to sleep. She had been unable to do any heavy housework and used a cane in order to walk.

Contending that the judgment be reversed and the decision of the Industrial Commission reinstated, respondent argues that it is the province of the Industrial Commission to draw inferences and conclusions from the evidence and the courts do not interfere unless the Commission's findings are against the manifest weight of the evidence.

In our opinion the record supports the trial court's finding that the decision of the Industrial Commission is contrary to the manifest weight of the evidence. The evidence shows the claimant to be a woman of limited education who prior to her injury had worked as a machine operator, waitress and cook. The testimony of Dr. Pease shows that in February, 1969, 5 years after the injury, she walked with a cane, and limped on the right side. He testified that she had a shortening of the right leg and although he thought the disc pathology was "old" he found a degenerated lumbo sacral intervertebral disc at L—5 and S—1. He described her hip condition as permanent. She complained of constant pain.

In *Springfield Park Dist. v. Industrial Com., 49 Ill.2d 67,* we affirmed the judgment of the circuit court affirming an award based on the Commission's finding that the claimant employee had suffered an injury which

rendered him "wholly and permanently incapable of work" although the injury involved was limited to his arm. Here, in addition to the leg and hip involvement Mrs. Rodenski is suffering from back pains caused by the degenerated lumbo sacral intervertebral disc, she underwent an obturator neurectomy which did not succeed in relieving the pain, and there is no evidence which refutes her testimony of constant pain and resultant inability to work.

In *Hendren v. Industrial Com., 19 Ill.2d 44,* we said at page 49: "While the arbitrator's findings are not binding upon the Industrial Commission, which has original jurisdiction of cases brought before it on review, *(American Smelting and Refining Corp. v. Industrial Com., 13 Ill.2d 275,)* nevertheless, the arbitrator's decision is not without legal effect. It has been held to provide the basis for the entry of a judgment by the circuit court, *(St. Louis Pressed Steel Co. v. Schorr, 303 Ill. 476,)* and to be *res judicata* of the rights of the parties. *(Black v. Industrial Com. 393 Ill. 187;* 2 Angerstein, Illinois Workmen's Compensation, 400-402.) Hence, the arbitrator's findings and award may be relied upon and sustained by the circuit court when it finds that the decision of the Industrial Commission was against the manifest weight of the evidence."

The circuit court did not err in setting aside the decision of the Industrial Commission and reinstating the award of the arbitrator and the judgment is affirmed.

*Judgment affirmed.*