(No. 46243.—

JAMES IRVING, Appellee, v. THE INDUSTRIAL COMMISSION *et al.*—(Robert Lavin & Sons, Inc., Appellant.)

*Opinion filed November 27, 1974.*

Discipio & DeCarlo, of Chicago (Vito D. DeCarlo, of counsel), for appellant.

Daniel N. Kadjan and Herbert M. Berman, of Chicago (Arnold and Kadjan, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

This is a direct appeal under our Rule 302(a) (50 Ill.2d R.302(a)) by the respondent, Robert Lavin & Sons, Inc., from a judgment of the circuit court of Cook County entered on August 1, 1973, which set aside a decision of the Industrial Commission and reinstated the arbitrator's award in favor of James Irving, the claimant.

James Irving was employed as a maintenance man for Robert Lavin & Sons, a brass- and aluminum-manufacturing company, when he allegedly injured his back on December 31, 1969. He was removing boards from a scrap bin when he experienced pain in the back which radiated down the left leg for 10 to 15 minutes. He had been carrying boards weighing 70 to 80 pounds each, when he felt the pain. There were no other employees in the area at the time, he testified. About 20 minutes later he told a fellow worker, Willie King, what had occurred. King testified that he had seen the claimant leaning against a wall, holding his side and complaining of pain in his back. Irving said that after work he drove home and sat down to watch television. A little later he found that he could not stand up or move his left side. His wife, brother and a policeman friend took him in a squad car to St. George's Hospital. An emergency room nurse, Kathleen Stafford, testified from the hospital's records that she took the claimant's case history at 4 a.m. on January 1. She testified that the hospital record did not show that the claimant had said that the claimed injury had occurred at work. It showed, she said, that he had told her that he had received a bullet wound 20 years ago and the bullet, which was still lodged in his buttock, had caused him pain and loss of movement for the past few days. The claimant testified in rebuttal that he had not spoken to Kathleen Stafford. He testified that nothing had occurred in the emergency room other than his being given a hypodermic injection and sedatives and then released.

On January 5, 1970, the claimant visited Dr. C. R. Chadbourn, who had treated him previously when he had been injured at the respondent's factory. He testified that he told Dr. Chadbourn that he had been injured at work. Dr. Chadbourn, who referred the claimant to Dr. Charles Pease at Columbus Hospital, testified that at the time of his visit Irving was in extreme pain, that Irving had not said that he had been injured at work, that he had not taken a medical history from the claimant and that he had treated him as a private patient.

Irving testified that he had to be carried by his brother and his policeman friend to Columbus Hospital where he was hospitalized for 16 days. While there Irving said he phoned the respondent's personnel manager, Walter Smith, and his foreman, Edwin Burdis, and informed them of his accident. He testified that his wife obtained accident claim forms from the respondent and that he completed them in the hospital and gave them to Dr. Pease. Irving further testified that Dr. Pease told him that he would have to change his story about being injured at work or he would discharge him from the hospital. Irving said he refused and that he was discharged even though he was so disabled his brother and friend had to carry him out of the hospital. Dr. Pease testified that Irving had never told him that he had been injured at work and that he had been referred by Dr. Chadbourn specifically as a private patient. Irving was discharged, he testified, because in his judgment he no longer required hospitalization.

A few days later Irving was hospitalized by Dr. Irving Starkman at Martha Washington Hospital and underwent surgery for a herniated disc. Dr. Starkman testified that the claimant had told him he had been injured at work and that in his opinion there was a causal connection between his injury and the slipped disc for which the laminectomy was performed.

Although an arbitrator's findings may under some circumstances be given legal effect (*Quick v. Industrial*

*Com.*, 53 Ill.2d 46; *Lewandowski v. Industrial Com.*, 44 Ill.2d 204; *Hendren v. Industrial Com.*, 19 Ill.2d 44), it is primarily the Industrial Commission's function to determine questions of fact and to draw such reasonable inferences as are warranted by the evidence. The Commission's determination and not the arbitrator's will be controlling, unless the Commission's decision is contrary to the manifest weight of the evidence. (*Ford Motor Co. v. Industrial Com.*, 43 Ill.2d 170, 173; *Huddleston v. Industrial Com.*, 27 Ill.2d 446.) Here the Commission's determination was not contrary. The governing question here was one of credibility and within the province of the Commission. (*State House Inn v. Industrial Com.*, 32 Ill.2d 160, 164.) The Commission assessed the truthfulness of the testimony of the witnesses, including that of the claimant, Nurse Stafford and Dr. Pease, and we cannot say its finding was contrary to the manifest weight of the evidence.

For the reasons given, the judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*