(No. 47809.

CHESTER MYSZKOWSKI, Appellant, v. THE INDUS-TRIAL COMMISSION *et al.*—(American Can Company, Appellee.)

*Opinion filed Sept. 20, 1977.—Rehearing denied Nov. 23, 1977.*

Chester Myszkowski, of Chicago, *pro se.*

Gifford, Detuno & Gifford, of Chicago (Thomas W. Gifford, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

Petitioner, Chester Myszkowski, appeals the Cook County circuit court's judgment which confirmed the Industrial Commission's order denying him compensation. The sole issue presented is whether the Industrial Commission's finding that petitioner did not sustain an injury arising out of and in the course of his employment is against the manifest weight of the evidence.

Petitioner retained a lawyer, and an application for claim was filed with the Commission on December 11, 1969. Respondent did not receive notice of this filing until February of 1970. The claim was subsequently dismissed for want of prosecution, but petitioner succeeded in having it reinstated. Unsuccessful in finding new counsel, he has appeared *pro se* throughout these proceedings.

At the arbitration hearing on November 9, 1972, petitioner testified that, close to quitting time on December 18, 1968, he sustained a back injury while at work lifting stainless steel slitter rails onto a truck. Because of the pain in his back, petitioner called his son, who came to the plant, helped him change his clothes, and drove him home. Petitioner did not seek medical assistance at the respondent's first-aid department, although he had sought such assistance on previous occasions when injured. He did

not see or speak with his supervisor before leaving the plant.

Petitioner stated that, on the following day, he called the respondent's answering service to report his back injury and to explain his absence from work. Three days later, he visited his doctor, who prescribed drugs for his ailment. (The doctor did not testify at the hearing.) Petitioner testified that, subsequently, Mr. Wagner, the respondent's administrator of its employment and benefits program, called him at home and asked what had happened; that he told Wagner he had hurt his back while at work, and Wagner allegedly responded, "Don't do anything. When you feel better, then come in and see me. I will take care of everything." Petitioner stated that his supervisor, James Matyska, called next to inquire about the back injury and, at that time, also informed him of having to break into petitioner's tool box to get some needed parts. Petitioner never returned to work following the alleged injury.

Petitioner stated that during February of 1969, he received a notice from the respondent that a check awaited him at work. On August 31, 1969, respondent sent petitioner a $274 check for 85.4 hours. The check was marked "paid—not worked." Petitioner further testified that he had contacted company officials on a number of occasions during 1969 regarding his case, but received no assistance in processing his claim.

Approximately one week after the filing of petitioner's claim with the Commission, a certified letter of termination was sent him by the respondent. The letter was returned unaccepted. Petitioner, in February of 1972, received a telegram from respondent telling him to come to the plant to pick up his tools. He did so and, allegedly, it was during this visit to the plant that he first learned of his formal termination.

To substantiate his claim of injury, petitioner called

several witnesses. His son testified that he went to the plant to drive his father home after the latter called saying he had hurt his back. Petitioner's witness, Mr. Wagner, testified that it was probably sometime during December that, at the request of the supervisor, he called petitioner to find out why he had not been at work, and to determine when he was going to return. Wagner did not recall any discussion about petitioner's alleged injury and denied any discussion concerning compensation. Wagner testified that sick or absent employees are to report in by phone to the company's answering service, and that these messages are recorded and transcribed for company records. (The arbitrator ordered the respondent to produce the transcription of tapes for the period in question. These transcriptions, however, were not produced. On review before the Commission, Jerry Northan, respondent's coordinator of employee relations, explained that the transcribed records are kept for only two years, and apparently therefore were not available.)

James Matyska, petitioner's supervisor, called on behalf of the petitioner, testified that he did not see petitioner when he allegedly hurt his back and could not recall when petitioner was last at work. The witness stated that he called petitioner at his home to inform him about having to break into his tool box, but not to inquire about a back injury. Matyska, however, did recall petitioner telling him something about a back problem.

Following Matyska's testimony, the respondent, American Can Company, presented its case. It introduced into evidence some of petitioner's time cards and payroll reconciliation records for the weeks ending November 17, 1968, through December 22, 1968. These time cards and payroll records indicated that the week ending December 1, 1968, was the last time petitioner performed work for which he was paid. Respondent, therefore, asserted that petitioner could not have sustained an injury at work on

December 18, 1968.

On review before the Commission, the petitioner presented additional witnesses. Jerry Northan was called and testified that injuries which occur on the work premises are to be immediately reported to the supervisor. Northan recalled a conversation with petitioner in November of 1969, but denied any discussion about workmen's compensation forms or the filing of a claim. Petitioner's final witness, Elmer Holdorf, a fellow employee whose daily work shift started just as petitioner's ended, testified that he saw petitioner at the plant on December 18, 1968, but did not see him working on the slitter rails and had only "heard" petitioner had hurt his back.

It is axiomatic that the Commission's decision will not be reversed on review unless contrary to the manifest weight of the evidence. (*E.g., Beloit Foundry v. Industrial Com.* (1976), 62 Ill. 2d 535, 538.) In this case, whether the petitioner sustained an injury arising out of and in the course of his employment was a question of fact for the Commission to decide. (*E.g., Eyzen v. Industrial Com.* (1970), 46 Ill. 2d 488, 491.) In reaching that decision, it was the province of the Commission to determine the credibility of the witnesses and to draw reasonable inferences from the evidence. (*E.g., Irving v. Industrial Com.* (1974), 59 Ill. 2d 207, 210.) Essentially, the question presented here was one of credibility. Having read the entire record, we are unable to conclude that the Commission's finding was contrary to the manifest weight of the evidence.

Petitioner additionally argues that because he was unsuccessful in retaining counsel, he was unable to receive a fair hearing. The record, however, indicates that the petitioner was assisted and accommodated by the arbitrator and the Commission along every step of the proceedings from the moment the Commission permitted the claim to be reinstated.

Accordingly, the judgment of the circuit court of Cook County is affirmed.