JOHN DEAN, Appellee, v. THE INDUSTRIAL COMMISSION *et al.*, Appellants.

Second District (Industrial Commission Division)   No. 2—84—1123WC

Opinion filed April 3, 1986.—Rehearing denied June 9, 1986.

340

WEBBER, P.J., dissenting.

Michael E. Fezekas, of Stevenson, Rusin & Friedman, Ltd., of Chicago, for appellants.

Noel Lindenmuth and Richard A. Kimnach, both of Anesi, Ozmon & Lewis & Associates, Ltd., of Chicago, for appellee.

JUSTICE BARRY delivered the opinion of the court:

The petitioner, John Dean, filed a claim under the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*) for injury he sustained while an employee of the respondent, Commonwealth Edison and Nuclear Installation Service Company, a/k/a NISCO (the company). The company and the Commission appeal from a judgment of the circuit court which set aside and remanded the Industrial Commission's denial of benefits.

After employing the petitioner as a boilermaker, in March of 1980, the company promoted him to job superintendent at the Braidwood Nuclear Plant. One year later, when the petitioner was transferred to the Byron nuclear plant (the plant), his additional responsibilities included supervising laborers, carpenters, and iron workers, as well as scheduling and meeting deadlines for the work in units one and two (the site), a multilevel area equivalent to at least 10 football fields.

Each work day, the petitioner drove 64 miles to the plant. At approximately 7:30 a.m., the petitioner commenced his daily routine by conferring with the site manager about contracted and extra work scheduled for completion that day, and then meeting with the craft foremen prior to inspecting the work at the site.

The petitioner began a tour of the site by ascending a 45°, 100-yard incline and then descending a 50- and a 10-foot ladder to inspect the integrated heads. To inspect the fuel transfer installation site, the petitioner next climbed those ladders, descended another 50-foot ladder and walked on scaffolding. Thereafter, the petitioner inspected the revision of unit one by crawling through the transfer tube. Occasionally, the petitioner climbed out of that tube, climbed the ladder, and descended the ramp back into unit one. After descending at least 40 feet into the reactor, the petitioner ascended and completed the tour by returning to his office to check material listings or to discuss questions. Daily, the petitioner spent six hours walking seven to 10 tours; one hour scheduling; and, sometimes, worked overtime.

Prior to May 18, 1981, even though the petitioner was overweight, smoked at least one package of cigarettes daily, and did not exercise, he had no difficulty climbing and descending inclines, ladders and stairways. However, when the petitioner climbed during his rounds on May 18, he intermittently experienced shortness of breath, pain in his chest and left arm, and nausea. When the petitioner left work later that day, he was lethargic and still had throbbing arm pain, "gas pains" and indigestion. The petitioner rested that evening. Between May 18 and May 20, the petitioner was involved with the boilermaker's union dispute.

Although the petitioner felt slightly better when he went to work on May 19, when he walked or climbed he again experienced shortness of breath, gas and left arm pain. His symptoms continued as he rested that evening.

The following day, the petitioner was nauseous when he arrived at work. Later, his arm pain became more severe; his gastric distress became unbearable; and he experienced grasping chest pains. The petitioner was driven home, and never returned to work.

Prior to being admitted to the hospital on May 20 for the purpose of ruling out coronary insufficiency, the petitioner consulted by phone with Dr. Charles Kanakis, Jr., a Board Certified cardiologist and internist, author and lecturer. Based on the petitioner's symptoms, rather than his denial of heart problems, Dr. Kanakis suspected that the petitioner was experiencing angina pectoris and advised him to report to the nearest hospital. Dr. Gallagher treated the defendant during that

hospitalization and consulted by phone almost daily with Dr. Kanakis. The petitioner's May 20 EKG was normal. The May 21 EKG revealed nonspecific abnormalities in the anterior septal area. Even though the next day's EKG revealed more pronounced T wave changes consistent with myocardial ischemia and/or damage, Dr. Gallagher advised the defendant to limit his activities and discharged him with medication. The petitioner still doubted that he had a heart problem but agreed to submit to the arteriogram which Dr. Kanakis planned to evaluate. Dr. Kanakis diagnosed the petitioner's chest discomfort as pre-infarctional angina pectoris.

The petitioner rested at home but his arm and chest pains continued. Very early on May 25, when his pains became severe and radiating, the petitioner's wife phoned Dr. Kanakis. The petitioner was again hospitalized. During his two-week stay, the petitioner was treated with therapy and medication; his EKG and enzyme changes were indicative of a heart attack; and the chest X ray revealed moderate vascular congestion. Dr. Kanakis supplemented his and Dr. Gallagher's conclusion that the petitioner had experienced a myocardial infarction, with his opinion that the heart attack occurred in the petitioner's anterior septal area.

At the arbitration hearing, the petitioner introduced Dr. Kanakis' evidence deposition which set forth the following. Dr. Kanakis explained his early diagnosis of the petitioner's condition as atherosclerotic heart disease with coronary artery disease, status post-myocardial infarction, and mild chronic obstructive pulmonary disease. Dr. Kanakis stated that exertion, climbing and rushing caused the petitioner's more frequent pains in mid-May of 1981. The overexertion, instead of solely precipitating the heart attack, produced an oxygen imbalance which caused recurring pain to result from increasingly less exertion. The petitioner's coronary arteries were unable to meet the increased demands on his heart. The petitioner's symptoms indicated the onset of the petitioner's pre-infarction syndrome and preceded the ongoing process of the work-related myocardial infarction which actually occurred when the petitioner's left coronary artery became totally obstructed. Dr. Kanakis concluded that since May 20, when the petitioner collapsed while exerting himself at work, the petitioner has been totally disabled.

Dr. Kanakis based his opinion on his knowledge of the petitioner's activities on the three work days the petitioner noticed chest pressure and on his August 1981 examination of the petitioner, when he discovered that the left anterior descending branch of the petitioner's left coronary artery was completely blocked and the ramus branch of the

left coronary artery was obstructed.

Dr. Kanakis further explained that during the petitioner's hospitalizations he relied upon Dr. Gallagher's data interpretations; that the petitioner could have had some degree of coronary disease prior to the infarction; and that the petitioner's arteriosclerosis could have been caused by numerous factors such as family history, smoking, weight, diet, cholesterol and high blood pressure.

Subsequent to August of 1981, Drs. Gallagher and Kanakis continued to treat the petitioner for his arm and chest pains. In October of 1981, the petitioner's medication did not alleviate his angina pectoris when he walked. The following December, the treadmill test exercise induced chest pains and an abnormal EKG compatible with ischemia. Stress still produces the symptoms for which Dr. Kanakis recommends bypass surgery.

Arbitrator William Kelley acknowledged the petitioner's May 25 myocardial infarction but was unconvinced that the physical stresses of the petitioner's employment produced more than the symptoms of angina pectoris. The arbitrator found that the petitioner failed to prove his present condition of ill-being causally related to the alleged May 20, 1981, incident. The arbitrator also characterized the petitioner's testimony incredible, and ignored Dr. Kanakis' opinion, even though he provided the only medical evidence of causation, for the following reasons. In the arbitrator's opinion, Dr. Kanakis' knowledge of the petitioner's work activities, related stresses, and prior heart trouble was limited. Also, Dr. Kanakis thought that the petitioner's symptoms commenced on May 18 and did not personally examine the petitioner until August of 1981.

On review, no additional evidence was presented. The Commission affirmed the decision of the arbitrator.

The circuit court found that the arbitrator improperly disregarded Dr. Kanakis' unrebutted deposition testimony about causation since no contradictory medical testimony was introduced. Therefore, the court found the arbitrator's and the Commission's decisions against the manifest weight of the evidence; set aside both decisions; and remanded the cause to them both to evaluate the claim for an appropriate award.

On appeal, the company and the Commission contend that the arbitrator and the Commission appropriately considered but gave no weight to Dr. Kanakis' opinion. They contend that his opinion failed to support causation and was based on minimal, incorrect knowledge of the petitioner's prior cardiac problems and his work history. In their opinion, the petitioner's chest pains and exertion at work signalled but did not cause, accelerate or aggravate his coronary problems. They

also argue that the petitioner's "incredible" testimony failed to establish that an event between May 18 and May 20 caused the infarction, and that the court invaded the province of the Commission by substituting its view of the evidence.

The petitioner responds that the Commission improperly disregarded the unimpeached, uncontradicted testimony of the petitioner's treating physician, Dr. Kanakis, the only medical expert witness. The petitioner asserts that Dr. Kanakis established that the petitioner's pre-infarction syndrome was causally connected to the compensable accidental injuries which arose out of and in the course of his employment on May 20, 1981, the date his symptoms from unusual work-related exertion and stress caused him to be taken home from work and hospitalized.

■ We recognize that the Commission's determinations of witness credibility and causal connection are not set aside unless contrary to the manifest weight of the evidence. (*Certi-Serve, Inc. v. Industrial Com.* (1984), 101 Ill. 2d 236, 461 N.E.2d 954.) However, the Commission's refusal to give effect to proper evidence is reversible error. *Crerar Clinch Coal Co. v. Industrial Com.* (1954), 3 Ill. 2d 88, 119 N.E.2d 739.

■■ A strain may occur and produce no symptoms during employment hours, but still be related to a resulting heart attack. (*McLean Trucking Co. v. Industrial Com.* (1978), 72 Ill. 2d 350, 381 N.E.2d 245.) Therefore, if a man's heart gives way under the stress of his normal duties and there is medical evidence of causation, the injury is compensable even if the petitioner had a previously existing heart condition aggravated by a coronary attack while performing physical labor for his employer. (*Sershon v. Industrial Com.* (1976), 63 Ill. 2d 395, 349 N.E.2d 8.) The employee need not prove that his employment was either the sole or the principal causative factor. He need only prove that the employment was a causative factor of the resulting injury. If the claimant supports causation with unrebutted expert medical testimony, then we may set aside the arbitrator's and the Commission's decision. *Kerz v. Industrial Com.* (1972), 51 Ill. 2d 319, 282 N.E.2d 710.

The record clearly indicates that the unusual exertion, stress, climbing, and rushing at work placed demands on the petitioner's heart and caused pain which signalled the onset of the petitioner's pre-infarction syndrome, the injury which ultimately culminated in the myocardial infarction. There was no prior indication that the petitioner either had abnormal EKGs or was unable to cope with either the physical or emotional aspects of his employment.

Dr. Kanakis, who was apprised of the petitioner's medical history, including a 1977 incident of angina pectoris, concluded that the complete occlusion in the left anterior descending branch of the petitioner's left coronary artery was in the same area as the infarction, and that the petitioner's employment precipitated and was causally connected to the pre-infarction syndrome which caused the petitioner's current disabling symptoms. That unrebutted conclusion was supported by treatment throughout the petitioner's illness commencing with the petitioner's initial consultation with Dr. Kanakis about this pre-infarction syndrome. At that time, Dr. Kanakis only questioned the petitioner about his employment activities between May 18 and May 20, the dates the pre-infarction syndrome surfaced. Dr. Kanakis' conclusions were unaltered by the subsequently elicited complete work history.

■ Contrary to the company's and the Commission's arguments, we find that Dr. Kanakis' original underestimation of the petitioner's work stress strengthens the value of his opinion. Dr. Kanakis almost daily conferred with Dr. Gallagher about the petitioner. Our conclusion that Dr. Kanakis attended the petitioner commencing with that initial conversation is not altered either by the fact that Dr. Kanakis relied upon Dr. Gallagher's data perceptions or by the fact that Dr. Kanakis did not personally examine the petitioner until August of 1981. Therefore, the Commission legally erred by arbitrarily discounting the testimony of the sole medical expert on causation, Dr. Kanakis. See *Crerar Clinch Coal Co. v. Industrial Com.* (1954), 3 Ill. 2d 88, 119 N.E.2d 739.

The company failed to rebut the occurrence facts and medical conclusions which indicated that the petitioner's pre-infarction syndrome was a compensable injury. Thus, the facts supporting causation were susceptible of only one inference. Therefore, the issue became one of law. *Material Service Corp. v. Industrial Com.* (1973), 53 Ill. 2d 429, 292 N.E.2d 367.

■ Consequently, this court exercises its prerogative to determine the issue (*Union Starch v. Industrial Com.* (1974), 56 Ill. 2d 272, 307 N.E.2d 118), and finds that the petitioner is entitled to workers' compensation benefits. To decide otherwise would allow the Commission to either substitute its opinion for or simply disregard pertinent testimony of the sole medical expert and would be equivalent to allowing the Commission to draw unauthorized medical inferences from unintroduced adverse medical evidence, when it could have exercised its authority to appoint an independent medical examiner. Ill. Rev. Stat. 1981, ch. 48, par. 138.19 (c).

Therefore, this court finds that based on the record, the Commis-

sion's decision was against the manifest weight of the evidence. The petitioner was disabled by an injury which arose out of and in the course of his employment, in that his work activities induced the pre-infarction syndrome which progressed to the infarction. The uncontroverted medical evidence indicates that the petitioner succumbed to the stress and physical activities of his employment. Thus, the petitioner's condition is causally connected to his compensable injury.

Accordingly, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

McNAMARA, LINDBERG AND KASSERMAN, JJ., concur.

PRESIDING JUSTICE WEBBER, dissenting:
I respectfully dissent from the rationale of the majority and suggest that it sets a dangerous precedent.

The fundamental premise of the majority and of the circuit court is that the testimony of Dr. Kanakis was unrebutted and therefore was binding on the arbitrator and the Commission.

In the first place, I cannot agree that the testimony was unrebutted. There was extensive cross-examination of the doctor which revealed that his approach was largely academic and theoretical.

What is more important is a basic legal doctrine that a trier of fact, whether a jury, court, arbitrator, or Commission, is always free to disbelieve any witness. If the theory be sound that the trier of fact is bound by unrebutted testimony, then an arbitrator would be forced to find that the earth is flat if such testimony were presented.

A finding of fact should be set aside only if no rational trier of fact could have reached the same conclusion. Compare *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781, concerning reasonable doubt.

This was, like all heart attack cases, a close case. Kanakis stated in his deposition testimony that myocardial infarction is an ongoing process. However, the petitioner proved nothing more than symptoms of angina pectoris during his working hours. He left work on May 20; he left the hospital on May 22; the infarct did not occur until May 25; in this situation the arbitrator was thoroughly at liberty to disregard Kanakis's statement that the petitioner was totally disabled on May 20. Otherwise, every infarct could be retroactively related to the workplace no matter how remote in time it might occur.

I would reverse the circuit court and affirm the Commission.