VIRGINIA WHEELER, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (McCarthy Brothers Construction Company, Appellee.)

Fifth District (Industrial Commission Division) No. 5—86—0349WC

Opinion filed February 26, 1987.—Rehearing denied April 20, 1987.

Serkland & Muelhausen, of Chicago (James C. Serkland, of counsel), for appellant.

Lynn E. Newmark, of St. Louis, Missouri, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Virginia Wheeler filed a claim for benefits against her employer, McCarthy Brothers Construction Company (McCarthy). Following a hearing, the arbitrator determined that a compensable accident had occurred, but found that there was no causal relationship between the accident and Wheeler's present condition of ill-being. The arbitrator's decision was affirmed by the Industrial Commission. On review, the circuit court of Jefferson County confirmed, and this appeal followed.

At the hearing before the arbitrator, Wheeler testified that on

March 23, 1981, she and a co-worker were moving a 300-pound filing cabinet. The cabinet slipped from the co-worker's hands, causing the weight to shift and fall on her. She felt something snap in her back and experienced pain in her lower back and right leg. She took Extra Strength Tylenol and finished the day doing lighter work.

When she returned home that evening, her husband had to assist her out of her car. She immediately went to bed. The next day, she could not lift the heavy items and was assigned light duties. However, she was not able to work the whole day and left work at 11 a.m. She then contacted Dr. Gene M. Modert and went immediately to his office. The pain continued to increase, and she "began going sideways." She stopped going out in public because people stared at her. The pain was so great that her children had to take over her housekeeping tasks. Finally, on May 13, 1981, she was admitted to the hospital for 10 days. She was allowed to leave the hospital by Dr. Coss under the conditions that she have a hospital bed and a Tens Unit and would come to the hospital for outpatient therapy. Dr. Sohni, who had actually admitted her to the hospital, had advised her to stay in the hospital until she could straighten up completely.

After her discharge from the hospital, McCarthy requested that she be examined by Dr. Misken in St. Louis. Wheeler and her husband traveled to St. Louis, but because Dr. Misken refused to examine her with her husband present, the examination did not take place. She then saw Dr. Chow at McCarthy's request. She also continued to see Dr. Modert.

Wheeler testified further that at the present time the pain has increased. It is particularly bad in her right thigh. She also has a sharp pain in her rib area when she bends over. She also has tenderness in her hands. The pain in her right hip runs down her leg into the calf of her leg. The pain from her back also goes into her left leg. She also tilts to the left. She had none of these problems prior to her accident.

On March 15, 1982, she was visited by a counselor from Crawford Rehabilitation at the request of McCarthy's insurance company. She was given several tests which she took. The counselor indicated to her that he really did not know what she was doing there because one had to be physically able to hold down a job. She was also examined at the request of the insurance company by Dr. Mendelsohn and Dr. Rosenbaum. At the request of Dr. Modert, she went to St. Luke's Hospital in St. Louis for a CT scan.

Wheeler testified about previous bouts with depression. She had been depressed following an earlier injury to her arm when she could not work and when her father passed away. Neither of these episodes

of depression had interfered with her ability to perform her daily duties.

On cross-examination, Wheeler testified that her 14-year-old son had died on August 20, 1981, and that she was upset by that fact.

Also testifying before the arbitrator was Dr. Modert. He has been Wheeler's general physician for the past 20 years. He examined her after her accident and eventually recommended her hospitalization. He noted that she continued to have pain in her lower back which worsened. X rays were taken but no physical findings were noted. A tentative diagnosis of strain was made, and she was placed on medications to relax her back and also for pain. Dr. Sahni, a neurosurgeon, saw her and did various studies which proved negative. A myelogram was done which was also negative. He first noted Wheeler's depression in July of 1981 when she had frequent crying spells. He did not know what the cause of the depression was, although Wheeler related it to her back pain. While she was emotionally disturbed as a result of the death of her son, he did not notice any difference in her afterwards.

Dr. Modert testified further that neither he nor the other consulting physicians had found any organic explanation or organic changes in Wheeler. While the psychological problem predominated, he was not prepared to say that there was no organic explanation for her condition. He felt that the proper approach would be a combination of psychological and physiotherapeutic treatment. When asked if her present condition of ill-being might or could be related to her accident of March 23, 1981, Dr. Modert stated that that had been the beginning of the problem and that he would relate it directly to that situation.

McCarthy's exhibits 2 and 3 were the reports of Dr. George Mendelsohn, who examined Wheeler on January 26, 1983, and on April 20, 1983, at the request of McCarthy's insurance carrier. He felt that with the negative myelogram, it was difficult to think that she had a problem with the disc in her lower back. However, he believed that she had been disabled since June 1982 and recommended that a CT scan be done. When he saw her again in April, the CT scan had proved normal. His impression was that there was no physical cause for Wheeler's condition, but rather a functional disorder. He did not believe she was able to work. Further, he did not believe that any therapy would be beneficial.

Also admitted into evidence was the deposition of Dr. Herbert E. Rosenbaum, who specializes in the diseases of the nervous system. He had examined Wheeler on July 23, 1983, at the request of McCarthy's

insurance carrier. He noted that Wheeler exhibited "camp de corps" posture. Such posture describes a very peculiar bent-over position wherein the back is almost parallel to the floor while the head moves up. The "camp de corps" posture occurs on a functional basis in a person who, for one reason or another, chooses to assume this posture as an emotional mechanism. He felt that she was seriously depressed. Because of her posture, he felt that she could not return to work. He indicated that her daily doses of Librium and Elavil affected her ability to function on a day-to-day basis. In his opinion her present condition of ill-being was causally connected to the accident of March 23, 1981, only peripherally, as a time frame, and that the description of the accident and the findings would completely exonerate a structural defect of any remarkable type, leaving only the emotional problem. Further, the loss of her child would be adequate to produce significant depression which could in and of itself correlate with Wheeler's posturing.

Also admitted into evidence was the deposition of Dr. William G. Fowler, who specializes in psychiatry. He examined Wheeler on November 19, 1983. He also reviewed the hospital records and medical reports of Doctors Sahni, Chow, Coss, Mendelsohn and Rosenbaum. Based upon his psychiatric evaluation, he found her slightly depressed, having no signs that would indicate significant depression. However, due to the depression medications she was taking and the muscle relaxants, this was impossible to evaluate. It was Dr. Fowler's opinion that the injury to her lower back on March 23, 1981, which caused pain and muscle spasm and the elevation of cerebral spinal fluid protein indicated at least a temporary herniation of the nucleus pulposus. Wheeler had developed a peculiar stance and gait to minimize her pain, and that having maintained such a posture and gait for a prolonged period of time, she had probably developed contractures such that deviation from that stance and gait would be painful, and much deviation would be impossible. He had no doubt that Wheeler's present condition of ill-being was due or related to her injury on March 23, 1981. He considered her totally unemployable, but felt that with physical, orthopedic and psychiatric treatment, she might return to work.

The arbitrator concluded as follows:

"1. Petitioner has failed to prove her present condition of ill-being is medically causally connected to the accident of March 23, 1981. The Petitioner's current inability to work is related to a depression and emotional state which can not be causally connected to the work related incident.

2. There is little evidence to support the necessity of medical treatment for the Petitioner's back as the overwhelming weight of the medical evidence is, there is no organic injury to Petitioner's back causing her present condition."

The sole issue raised on appeal is whether the decision of the Industrial Commission was against the manifest weight of the evidence.

■ It is the function of the Commission to draw inferences from the evidence in workers' compensation proceedings, and that decision of the Commission upon finding of fact is not to be set aside unless it is manifestly against the weight of the evidence. (*ACF Industries, Inc. v. Industrial Com.* (1956), 8 Ill. 2d 552, 557.) While the medical evidence in the record before us is conflicting, there was substantial evidence introduced that Wheeler's condition of ill-being had no organic cause, and was not causally connected to the injury she suffered on March 23, 1981.

Wheeler argues that Dr. Rosenbaum's testimony was not worthy of any weight since he did not take into account significant medical factors. (See *Hartwell v. Industrial Com.* (1972), 51 Ill. 2d 562.) Specifically, he did not take into account the fact that her peculiar posturing and depression were evident prior to the death of her son. Plaintiff relies on the recent case of *Dean v. Industrial Com.* (1986), 143 Ill. App. 3d 339. In that case, the worker suffered a heart attack and filed for benefits. At the arbitration hearing, the worker introduced the evidence deposition of his physician, Dr. Kanakis, who testified that the overexertion caused by the demands of the worker's job did not precipitate a heart attack but, instead, produced an oxygen imbalance which caused recurring pain to result even from increasingly less exertion. The worker's symptoms indicated the onset of the worker's preinfarction syndrome and preceded the ongoing process of the work-related myocardial infarction which actually occurred when the worker's left coronary artery became totally obstructed. The arbitrator denied benefits, and on review by the Commission, the arbitrator's decision was confirmed. However, the circuit court set aside the decision as against the manifest weight of the evidence.

On appeal before this court, we held that because the testimony of Dr. Kanakis was uncontroverted, the Commission had erred by arbitrarily discounting the testimony of the sole medical expert on causation. Therefore, the Commission's decision was contrary to the manifest weight of the evidence, and we affirmed the decision of the circuit court. *Dean v. Industrial Com.* (1986), 143 Ill. App. 3d 339, 342-46.

■ Here, however, in the case before us, we cannot say that the

opinions of the doctors who testified on behalf of Wheeler were uncontroverted. The other cases relied on by Wheeler, *Hook v. Industrial Com.* (1972), 53 Ill. 2d 245, *Kerz v. Industrial Com.* (1972), 51 Ill. 2d 319, and *Lewandowski v. Industrial Com.* (1969), 44 Ill. 2d 204, are all cases in which the claimants' medical testimony was unrebutted, leaving no inference to be drawn by the Commission.

■ The Commission is the judge of the credibility of the witnesses and the weight to be given to their testimony. It is for the Commission to decide which of the conflicting medical opinions given in a case is to be accepted. *Caterpillar Tractor Co. v. Industrial Com.* (1983), 97 Ill. 2d 35, 43.

As we do not find the decision of the Commission to be against the manifest weight of the evidence, we affirm the decision of the circuit court of Jefferson County.

Affirmed.

BARRY, P.J., and McCULLOUGH, McNAMARA, and KASSERMAN, JJ., concur.